# Richmond.

WADDILL v. SEBREE.

April 7th, 1892.

1. AGENT—*Undisclosed principal.*—Where one contracts as agent without naming a principal, the contract enures to the latter's benefit, provided he ratifies the same.

2. IDEM—*Parol evidence.*—Parol evidence is admissible to show who is the principal.

3. PRINCIPAL AND AGENT.—In such case agent as well as principal is bound.

4. EARNEST MONEY—*Forfeiture.*—Payment down of earnest money cannot change a contract of purchase into an option. Such payment operates only as part payment of the purchase-money.

5. SPECIFIC PERFORMANCE—*Case at bar.*—Defendant, a non-resident, employed an agent to negotiate for him the purchase of certain lots. Agent purchased them in his own name, but the defendant, on terms acquiesced in by him, including payment of $500 cash to be forfeited in case of default. Defendant afterwards refused to complete purchase;

HELD:

> In suit for specific performance, aided by attachment in equity, that defendant was bound.

Appeal from decree of circuit court of Henrico county, rendered March 25th, 1891, in an attachment suit in equity wherein the appellant, Edmund Waddill, Jr., was complainant, and W. E. Sebree and W. E. Terrell were defendants. Opinion states the case.

*Hill Carter* and *A. L. Holladay*, for appellant.

*W. W. & B. T. Crump*, for appellee.

LACY, J., delivered the opinion of the court.

The bill in this case was filed by the appellant for the specific performance of a contract in writing for the sale of the land of the plaintiff, situated in Henrico county, near the city of Richmond, made with W. E. Terrell as agent for W. E. Sebree, the said agent professing to be an agent, but withholding the name of his principal, and at one time giving a fictitious and false name. Many devices were resorted to to disguise the real party in order to get the property as low as possible. It being thought that as W. E. Sebree was a wealthy property owner, holding many lots in a new-made suburban addition to the city of Richmond, that the plaintiff might demand a higher price for his land if he should discover during the negotiation that Sebree was desirous of buying this property, which adjoined his new town. These are not detailed here, as they do not affect the question at interest.

The negotiations went on until a contract was drawn up and signed and sealed between the plaintiff and Terrell, the price to be $22,500, one-third in cash and the other two-thirds in one and two years' time, with interest from date, secured by trust deed on the property, and ten days were allowed the purchaser to examine the title, and $500 paid in cash to bind the bargain, and the $500 to be forfeited if Terrell made default.

The contract was made February 12th, 1891. About the 22d of February, following, a difficulty was raised, and the title, it was said, was not good, but the defect was never formulated, and is claimed to be unfounded, as Sebree agreed to offer $18,000 cash shortly afterwards, on which we have no opinion. Terrell declined to go further with Sebree in his concealments, disclosed his principal to Waddill, and the one-third cash under the contract being now due and payment refused by the real debtor, Waddill brought suit against Terrell and Sebree; and Sebree, being a non-resident of the state of Virginia, owning property in the state, an order of publication as

to him was asked, but his subsequent appearance in the state gave opportunity to make personal service on him, which was had, and an attachment in equity levied upon his real estate in the county of Henrico. Terrell filed his answer and cross-bill, setting forth the whole transaction, as detailed above, and insisted that Sebree should be required to hold him harmless in the premises, as all his acts were as his authorized agent, and every step taken by him had been expressly and distinctly directed by Sebree in person, who was in Richmond, in concealment, a part of the time under a false name registered at Ford's Hotel. Sebree denied none of these things, and they are all doubtless *perfectly true*, but he appeared and moved to quash the attachment upon the ground that the contract did not carry his name with the transaction, and that there was no debt due from him which could be the ground for an attachment, and that the provision as to the $500 forfeiture made the contract an option which he could sanction or reject at his pleasure, as he was not bound further than that amount in the contract, and that the said attachment was issued upon false suggestion and without sufficient cause.

The case came on upon the foregoing, and upon the answer of Terrell, treated as an affidavit on the part of the plaintiff; whereupon the court abated the attachment, upon the ground that the contract shows no debt due to the plaintiff by the defendants, and dismissed the proceedings. The plaintiff (Waddill) appealed to this court from the foregoing decree.

There is no dispute about the facts stated above. The defence is made that Sebree is not named in the contract and not bound by it. The facts being established that Sebree, the principal, authorized Terrell to do for him the acts that he did do; that he directed and procured each and every act in detail, as transacted; that he approved and ratified each and every act as done, and after its completion makes these acts his own. If he is not bound, Terrell, his agent, is, and by his procurement he not only directed Terrell when and how to

act, but after he had acted promised to protect him in the premises, but refused to bind himself to this end in writing. He is bound by Terrell's acts, directed by him, for his own benefit. If Terrell had sought to assume the benefit of these acts advantageously to himself it would have been in fraud of his principal. For the principal to repudiate his agent's authorized acts, made by him for the benefit of and at the request of the said principal, is to operate a gross fraud upon Terrell, the agent.

There has been no disavowal by the principal of these authorized acts of his agent, and he thus makes these acts his own. When one contracts as agent without naming a principal, his acts enure to the benefit of the party, although at the time uncertain and unknown, for whom it shall turn out that he intended to act, provided the party thus entitled to be principal ratify the contract. And where the credit is given solely to the servant, if it be in ignorance of who the principal is, although with knowledge that the servant is acting on behalf of another, and much more if, without such knowledge, the principal, when discovered, is liable. And parol evidence is admissible to show who is the principal when he is undisclosed by the contract in order to have the benefit thereof or to be charged therewith; and in such case the principal is bound in addition to the agent, for the agent is bound also by the terms of the contract. *Thompson* v. *Davenport*, 9 B. & C. 78 (Smith Leading Cases, Vol. II, Part I, p. 453); 1 Par. Cont., pp. 48, 50; *Mechanics Bank* v. *Bank of Columbia*, 5 Wheat. 326; 1 Min. Inst. 211.

As was said by Mr. Justice Johnson in *Mechanics Bank* v. *Columbia Bank, supra,* "the liability of the principal depends upon the facts—(1) that the act was done in the exercise and (2) within the limits of the powers delegated. These facts are necessarily inquirable into by a court and jury, and this inquiry is not confined to written instruments (to which alone the principle contended for could apply, but to any act, with

or without writing), within the scope of the power or confidence reposed in the agent." See, also, 8 Wheat. 358; 8 Howard, 468; 1 Wall. 241; 1 Cliff. 523.

If the acts done and performed in this case were so done at the special instance and request of the principal for his benefit are his acts, then at the levy of this attachment he owed to the plaintiff $7,000, at the time due and payable, and this debt should be satisfied out of the property of the defendant; which is equally true as to the residue of the purchase-money becoming due and payable. And there is no ground whatever for the idea and decision that the earnest money paid down changed the character in any degree of the contract; it operated only as a part payment of the purchase-money.

It follows that the decree of the circuit court of Henrico, appealed from here, is erroneous, and the same must be reversed and annulled.

HINTON, J., *dissented.*

DECREE REVERSED.