# CHARLESTON.

## POOLE v. CAMDEN.

Submitted November 14, 1916. Decided November 28, 1916.

1. PRINCIPAL AND AGENT—*Undisclosed Principal—Parties.*

   An undisclosed principal is not a necessary party to a suit against the one with whom a contract is made to rescind the contract and recover the property the subject of the contract or the value thereof. (p. 313).

2. CANCELLATION OF INSTRUMENTS—*Nature of Relief.*

   When the subject of such a contract is shares of stock in a corporation, and the purchaser has transferred to his undisclosed principal a part of the shares purchased, but has other shares of the same class in the same corporation he may on cancellation of the contract be decreed to make up the deficiency out of such other shares owned by him, or there may be a money decree against him for the value thereof. (p. 314).

3. CORPORATIONS—*Directors—Fiduciary Character.*

   The relationship of a director to stockholder in a corporation is not of that strict fiduciary character as to preclude him as a matter

of law from purchasing the shares of stock of such stockholder without incurring the penalty of having the sale set aside at the election of the stockholder, regardless of the facts and circumstances of the transaction.   (p. 314).

4.  SAME—*Directors—Managing Directors.*

But a director or managing officer of a corporation does sustain such fiduciary relationship to a stockholder of a corporation, as to require of him when proposing to ` purchase his stock, and he is called upon for information as to the property and financial condition of the corporation, and its plans and purposes for the future, and for all other facts affecting the value of such stock, and if he offers his opinion thereon, and undertakes to give some information peculiarly within his knowledge as such director or officer, he is bound at his peril, and upon penalty of having the sale rescinded, to give full and correct information and to withhold nothing from such stockholder affecting the value of his shares.   (p. 314).

5.  CONTRACTS—*Misrepresentations—Expressions of Opinion.*

The mere expression of an opinion, though false, respecting the subject matter of a contract, will not generally be regarded as fraudulent, but when there exists a fiduciary relationship between the parties, and it is accompanied by other matters going to establish misrepresentation, imposition, undue influence, undue confidence, mental inability, or surprise, it may amount to fraud justifying a rescission of the contract.   (p. 321).


Appeal from Circuit Court, Wood County.

Suit by Sophie R. Poole against Sprigg D. Camden.  From a decree for plaintiff, defendant appeals.

*Affirmed.*


*H. P. Camden,* for appellant.

*Geo. W. Johnson* and *Smith D. Turner,* for appellee.


LYNCH, JUDGE:

The purposes of the suit were, upon grounds alleged, to have cancelled the contract of sale and purchase by plaintiff Sophie R. Poole to defendant Camden, on January 21, 1910, of two hundred and fifty eight (258) shares of the capital stock of the Parkersburg, Marietta and Inter-Urban Railway Company, to have said shares returned to her, and an accounting by Camden of all stock and cash dividends received

by him, and if he should have disposed of any or all of said stock, that he might be decreed to deliver and transfer to plaintiff an equal number of shares out of other stock owned by him in said company, and that he be required also to accept the return to him of the sum of money paid by him to plaintiff for said stock upon such terms and conditions as the court might impose in accordance with equitable principles.

The court below upon the pleadings and proofs adjudged and decreed in accordance with the prayer of the bill, that the purchase and sale of said two hundred and fifty eight shares of stock be set aside and annulled and declared void; that upon an accounting thereby decreed defendant Camden should be entitled to receive from plaintiff at the rate of one hundred and seventy five dollars per share for each share recovered by plaintiff with interest thereon from the date of payment. And the court not being advised of the exact status or present ownership of two thirds of the shares of stock sold by plaintiff to defendant, and the dividends declared and paid thereon, and whether he now owns in his own right sufficient additional shares of stock in said railway company which he can and should turn over to plaintiff in lieu of the shares so obtained from her with the dividends thereon and as to other matters referred to in its decree, it was further adjudged and decreed that the cause be referred to a commissioner thereby authorized to ascertain and report upon the matters on which the court wished information as a basis for its final decree adjusting and settling the rights of the parties.

The first point is that it was error to pronounce the decree complained of in the absence of J. N. Camden, Jr., for whom and himself it was alleged in the answer of Sprigg D. Camden he had purchased said stock.

Upon the filing of said answer the court of its own motion required plaintiff to amend her bill bringing in said J. N. Camden, Jr., as defendant. When so brought in the court sustained his demurrer to the bill, and on final hearing was of opinion that he was not a necessary party, and dismissed the bill as to him, and pronounced the decree now complained of.

The amended bill alleged that J. N. Camden, Jr., if interested originally in the purchase of said stock, was an undisclosed principal, that all the transactions of plaintiff relating thereto were with Sprigg D. Camden individually, and that she was ignorant of any interest of said J. N. Camden, Jr., therein, until informed thereof by the pleadings and proofs filed by defendant in this cause. Appellant having upon demurrer thereto procured the dismissal of said amended bill, nevertheless contends, that no decree should have been pronounced on the original bill, in the absence of J. N. Camden, Jr.; that as the latter is owner of two thirds of the stock purchased by plaintiff there can not be a partial rescission of the contract; that if a rescission be had it must be of the entire contract, and that the decree is, therefore, erroneous in this particular if for no other reason. ·

The effect of the decree below was to find as a fact that J. N. Camden, Jr., was not a party to the contract of sale and purchase of the plaintiff's stock, and if interested therein was an undisclosed principal, and if so, Sprigg D. Camden cannot escape personal liability by disclosing the fact that another was interested with him in the transaction. We cannot say from the evidence that the finding of the court was erroneous. Indeed we do not see how it could have found otherwise. The transaction was covered by documentary evidence; the sales order in the broker's office was signed by Sprigg D. Camden individually; he gave to plaintiff his individual check for $10,000.00, the cash payment, and his individual note for $35,150.00, for the deferred payment, and L. H. Poole, plaintiff's husband, who represented her as agent in the transaction, swears positively, that the name of J. N. Camden, Jr., was not mentioned in the negotiations, and that he had no dealings with him; and Mrs. Poole herself swears that she did not know J. N. Camden, Jr., in the transaction. The testimony of George Newberger, broker, is that he represented S. D. Camden only, in the negotiation with plaintiff for the purchase of the stock.

Although an undisclosed principal, when discovered, may be rendered liable for the contract of his agent, the law is well settled that one dealing with an agent for an undisclosed

principal may at his election sue one or both on the contract, and that if he elects to sue the one the other is not a necessary party to the suit. Mechem on Agency, (2nd ed.) sections 1410-1411, 1750 to 1758; *Poole & Co.* v. *Rice,* 9 W. Va. 73; *Leterman* v. *Charlottesville Lumber Co.,* 110 Va. 769, 67 S. E. 281; *Waddill* v. *Sebree,* 88 Va. 1012, 14 S. E. 849, 850; Burks' Pleading and Practice, section 62.

The contention, nevertheless, is that, as two thirds of plaintiff's stock has been transferred to J. N. Camden, Jr., the decree against Sprigg D. Camden is erroneous, it being beyond the power of the court to restore to Mrs. Poole all of the stock purchased from her. Upon ample authority we think it entirely competent for a court of equity, under the circumstances of this case, to mould its decree so as to do equity between the parties. If defendant has only a part of the actual stock purchased from plaintiff, he may be decreed to restore that part; and if he has other stock of the railway company, of the same class, he may be compelled to transfer a sufficient proportion of that to make up the deficiency, or if he has not sufficient stock to make restitution there may be a money decree against him for the value of the stock not restored. The bill and the prayer thereof are framed with this end in view. The authorities cited and relied on by counsel for plaintiff fully support this proposition. *Engeman* v. *Taylor,* 46 W. Va. 699, 714; *Worthington* v. *Collins,* 39 W. Va. 406; *Krouse* v. *Woodward,* 110 Cal. 638; *Marshall* v. *Marshall,* 11 Colo. App. 505; 10 Cyc. 645; 2 Cook on Corporations, (7th ed.) section 475, p. 1323; 4 Thompson on Corporations, (2nd ed.) section 4235; 2 Elliott on Contracts, section 2462, page 614. And this relief is suggested by Judge BRANNON in *Hogg* v. *McGuffin,* 67 W. Va. 456, 465.

The next proposition relied on for reversal is that it was error for the court below to hold as matter of law that a director of a corporation sustains such fiduciary relationship to the stockholders of his corporation that he cannot buy their stock without incurring the penalty of having the sale set aside at the option of the stockholder. We do not understand from the written opinion of the learned judge who presided in the court below that the court based its decree on the broad

proposition stated in the point of error, or that the decree necessarily involves affirmance of this extreme proposition. While counsel for plaintiff do contend for this as a correct legal proposition, as the West Virginia rule, and cite numerous decisions of this court in support thereof, the court below, after reviewing many of these and other decisions, held the true rule to be as deduced from the authorities, that if a director purchases the stock of another director equally acquainted with the facts and of the value of the stock, or because of his position and by the exercise of due diligence could have fully informed himself as to the value thereof, he may in the absence of actual fraud, freely purchase such stock; but if such stockholder be not also a director or an officer of the company, and be not in a position to fully inform himself by an examination of the books, etc., a director cannot without incurring the penalty purchase the stock of a stockholder except by fully informing him with reference to the value thereof, and this proposition constitutes the basis of the court's decree now brought in question.

The broad proposition contended for by counsel for plaintiff, and referred to as the West Virginia rule, we do not think is supported by the decisions cited, certainly not when it is sought to apply it to cases like the one here. We have examined all the cases, beginning with *Newcomb* v. *Brooks,* 16 W. Va. 32, and ending with *Keenan* v. *Scott,* 64 W. Va. 137, and *Plant* v. *Humphries,* 66 W. Va. 89. None of them involved a transaction directly between director and stockholder for the sale by the latter to the former of his stock in a corporation. They relate to the purchase by attorneys from their clients of the subject matter of the litigation, or under decrees procured by themselves, and in which their own interests were in the transaction opposed to the interests of their clients, as in *Newcomb* v. *Brooks* and *Keenan* v. *Scott, supra,* and *Lane* v. *Black,* 21 W. Va. 623; to cases where trustees under deeds of trust, and executors or administrators, undertook to acquire directly or indirectly from themselves in their fiduciary capacity to themselves in their individual capacities the property or subject of the trust, as in *Knight* v. *Watts,* 26 W. Va. 175, 212, and *Feamster* v.

*Feamster,* 35 W. Va. 1; to cases of partnership where one partner purchased from his co-partner his interest in the partnership property, as in *McKinley* v. *Lynch,* 58 W. Va. 58, *Thorne* v. *Brown,* 63 W. Va. 603, and *Roots* v. *Salt Co.,* 27 W. Va. 483, 493; and to cases where directors had attempted to acquire the corporate property or some interest therein from the corporation, as in *Sweeny* v. *Sugar Co.,* 30 W. Va. 451, *Hope* v. *Valley City Salt Co.,* 25 W. Va. 789, and other cases.

And it is said upon the authority of some of the cases, such as *Reilly* v. *Oglebay,* 25 W. Va. 42, 43, that this strict rule extends to every person who by his connection with another person, or who by being employed or concerned in his affairs, has acquired knowledge of his property, and to all persons coming within the reason of this rule. Certainly it can be applied only to cases of the character enumerated, or which do in fact fall within the reason of the rule as exemplified in the cases cited, and in our opinion the case at bar is not one of the class to which it may rightfully be applied, for we find no case going to the limit of holding that a director sustains any such relationship to individual stockholders, that regardless of the facts and circumstances surrounding the transaction the stockholder may of right arbitrarily elect to rescind the sale of his stock and recover it or its value from the purchasing director.

What then is the true relationship of directors to individual stockholders of a corporation? Is it the same in all respects as their relationship to the corporate property, precluding them from all dealings with stockholders for the sale and purchase of their stock, except upon penalty, at the mere election of the stockholder, of having the sale set aside regardless of the question of the bona fides of the transaction, or of the facts and circumstances of the transaction? Is the relationship the same as that of partner to partner, attorney to client, director to the corporate property, and business of the corporation? We think not.

The authorities are apparently conflicting on this question. Some, probably the larger number, hold that a director may deal with an individual stockholder and purchase his stock

practically on the same terms as a stranger. Others hold that directors are not only trustees of the corporate property but to some extent and in many respects for the shareholders as individuals, and while not prevented by their position from dealing with stockholders for the purchase of their stock, still before a director or managing officer, having special knowledge of the condition and affairs of the corporation, can rightfully purchase the stock of one not actively engaged in the management of the concern, he must inform him of the true state of the corporate affairs. 7 R. C. L., section 443.

In our opinion, and according to the great weight of authority, the true conception of the relationship of director to stockholder of a corporation is that while he is not his agent, trustee, or representative respecting his individual shares in the corporation, and having no possession of the certificates or script representing the stock, nor right or authority as such to deal in, sell or otherwise dispose of the same, and is not any more than a third person precluded from buying or otherwise dealing with the stockholder in reference thereto, he nevertheless does sustain such fiduciary relationship to the stockholder as to impose upon him the utmost good faith respecting such dealings, and when called upon to advise him in relation thereto, and as to the value thereof, and as to the condition of the property and affairs of the corporation. He is bound at his peril to withhold no fact known to him and unknown to the stockholder affecting the value of the stock. 2 Purdy's Beach on Private Corporations, section 737a; 4 Thompson on Corporations, (2nd ed.) section 4031; *Oliver* v. *Oliver,* 118 Ga. 364, 45 S. E. 232; *Stewart* v. *Harris,* (Kans.) 66 L. R. A. 261.

And all authorities agree that where a director misrepresents material facts peculiarly within his knowledge as a corporate officer, and the vendee relies thereon to his damage, the contract may be rescinded. Helliwell on Stock and Stockholders, section 184. In *Oliver* v. *Oliver, supra,* one of the leading cases cited by counsel for appellant, it is said: "When it is admitted, as it must be, both from the very nature of his duty and from the rulings of nearly all the cases, that he is trustee for the shareholder, how is it possible in

principle to draw the line and say that while trustee for some purposes, he is not for others immediately connected therewith? that the incidents of the trust relation stop short at the very point where it is vitally important to the shareholders that they should become active?'' And again: ''While not decided, it is in one case suggested that a stockholder in dealing with a director should recognize his superior opportunities for knowledge, and be warned thereby to exercise special caution. But the fiduciary relation fully warrants exactly the opposite course. Here, at least, the beneficiary may be off guard, and may rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid by the officer. Having previously trusted the director in the management of the company, he is not required, when selling his shares, suddenly to exhibit entire want of confidence.''

It is conceded by counsel for appellant who relies upon what he calls the majority rule, denying trust relationship between director and individual stockholder, that special circumstances may create or induce that relationship, citing as instances thereof, *Strong* v. *Repide,* 213 U. S. 419, 53 L. Ed. 853, and *Oliver* v. *Oliver, supra.* Though adopting the majority rule respecting a director as the general rule, affirmed by counsel, Mr. Cook, 1 Cook on Stock and Stockholders, (3rd ed.) section 320, says: ''There is no confidential relation between him and a stockholder, so far as a sale of the stock between them is concerned; and, so long as he remains silent and does not actively mislead the person with whom he deals, the transaction cannot be set aside for fraud.'' In *Strong* v. *Repide, supra,* the point of the syllabus applicable to this discussion is: ''Even though a director may not be under the obligation of a fiduciary nature to disclose to a shareholder his knowledge affecting the value of the shares, that duty may exist in special cases, and did exist upon the facts in this case'' which ''indicate that a director of a corporation owning friar lands in the Philippine Islands, and who controlled the action of the corporation, had so concealed his exclusive knowledge of the impending sale to the Government from a shareholder from whom he purchased,

through an agent, shares in the corporation, that the concealment was in violation of his duty as a director to disclose such knowledge and amounted to deceit sufficient to avoid the sale; and, under such circumstances, it was immaterial whether the shareholder's agent did or did not have power to sell the stock."

Conceding the so called majority rule to be the correct one, we think, upon the principles of the cases just referred to, recognizing the exceptions, that where a stockholder who, as in this case, is first sought by a secret agent of a director, with a proposition to buy his stock, and the stockholder goes to such director to obtain full information respecting the value of his stock and the condition of the corporation, its plans and prospects, the reason for a recent reduction of dividends, and all other information affecting or tending to affect the value of his stock, such director cannot withhold any information within his knowledge, or in any way mislead or deceive him, or by acts, words, or conduct, induce a sale of the stock to him, except upon penalty of having the sale rescinded at the option of the stockholder; that if he undertakes to speak or become active in inducing the sale he must speak fully, frankly, and honestly, and conceal nothing to the disadvantage of the selling stockholder.

Here, substantially as in *Stewart* v. *Harris, supra:* "Defendant suggests that plaintiff should have himself exercised more diligence in investigating the affairs of the bank; that the books of the bank were open to him. By this we are asked to say that in this case a means of knowledge is equivalent to knowledge; that a clue to the facts, which, if dilligently followed up, would lead to a disclosure, is equivalent to a discovery. Plaintiff could not be required to make an investigation of the books of the bank to determine its financial condition, simply because it was in his power to do so. The diligence required by one to protect his interests is only such as a person of ordinary prudence would exercise under like circumstances. In a case like the one under review, the trust relation existing between the parties, the superior opportunities of defendant to know of the condition of the affairs of the bank, and his actual knowledge of its affairs, required

no such diligence of inquiry on the part of plaintiff as is contended for by defendant. Plaintiff had the right to rely upon the belief that defendant would disclose to him the true condition of the affairs of the bank, and that he would not be called upon to investigate the condition of its affairs before he could with safety sell to defendant his holdings of stock. It is not the intent of the law to place a restraint on the affairs of business, when conducted fairly, honestly, and openly, nor to deprive one party to a contract of the advantage which superior judgment, greater skill, or better information may give; but it cannot give its approval to a course of dealing that will permit those occupying a trust relation to be unmindful of the trust, betray the confidence reposed, and profit by such betrayal.''

We cannot further review the authorities so well collected on both sides and presented in elaborate briefs of learned counsel. Our statement of the true rule is not, we think, wholly opposed to what is regarded as the rule of the majority; it is certainly in harmony with the principles of our own decisions, and is supported by reason as well as by authority; it is substantially the rule upon which the court below predicated its decree.

The question then is presented, was there such a breach of duty on the part of the defendant Camden as director towards plaintiff as stockholder, as entitled the latter to the relief decreed or to any relief as against the former? And we wish to observe in this connection, that we are not impressed from the evidence that there was any intention on the part of Mr. Camden to wrong or unjustly injure the plaintiff; that the breach of trust, if any, consisted in his failure to understand and appreciate the full meaning of his duty as director towards stockholder seeking information from him respecting the value of the stock he was seeking to buy. The record shows him to be a man of high standing, and one having the confidence not only of plaintiff, but of all of his associates, and we are not ready to, nor are we justified from the record, in inferring intentional wrong; quite the contrary. An intentional wrong is not to be imputed to him when the authorities defining his duties are in conflict, if not to some

extent misleading. The evidence on some of the material facts is slightly in conflict, but unless plainly erroneous we are not warranted in reversing the decree based on conflicting evidence. *Cox* v. *Coal & Oil Investment Co.*, 61 W. Va. 293; *Sibley* v. *Stacey*, 53 W. Va. 292; *Ruckman* v. *Cox*, 63 W. Va. 74; *Bradshaw* v. *Farnsworth*, 65 W. Va. 28.

One of the grounds for rescission alleged and supported by proof is that when asked by plaintiff's agent defendant represented that $175.00 per share offered for the stock was more than it was worth and more than its true value. The general rule is that mere expression of opinion though false will not be regarded as fraudulent, but when accompanied by other matters going to establish misrepresentation, imposition, undue influence, undue confidence, mental inability, or surprise, especially when there is a fiduciary relationship between the parties, it may amount to fraud justifying the rescission of a contract induced thereby. *Grim* v. *Byrd*, 32 Grat. 293; *Schuttler* v. *Brandfass*, 41 W. Va. 201. Defendant in his position as director, treasurer, and officer, had peculiar means of information. According to the evidence of L. H. Poole, defendant's representation was not only that $175.00 per share was more than the stock was worth, but that that price was more than its true value. This representation was accompanied, moreover, by another, the second ground relied on, namely, that the policies, plans and property of the company would not warrant a better or greater price for the stock, and that the recent reduction in dividends from six per cent to five per cent was due to the United States Corporation tax, afterwards ascertained by plaintiff's agent to have been but $500.00, when the fact was that the stock had continually grown in value and the net earnings of the company had for some years been from seventeen to eighteen per cent on the capital stock of the company, justifying much larger dividends, and that within a few months thereafter a stock dividend of one hundred percent. was declared, and at which time defendant insisted on a stock dividend of two hundred per cent., and that a little later he optioned his stock at $240.00 per share. And another representation was that defendant being already owner of a large amount of the stock,

wished to acquire a controlling interest in the stock in order to protect himself and those associated with him, and that if he could not do so, he would put his stock upon the market, when the evidence tends to show that the fact was that he and his associates together with the stock held in a fiduciary capacity already controlled said company. Another representation alleged and supported by the proof, was that defendant hoped in the course of time, in the remote future, to increase the dividends from five per cent. to an eight per cent. annually, when the fact was' that the net earnings of the company for previous years were sufficient to justify a much larger dividend, and soon afterwards amounted to practically net twenty three per cent. on the original capital.

It seems. to us that these facts in connection with other representations and concealments with reference to the condition, plans, and prospects of the corporation, not warranted by the facts, alleged and supported by proof, will not warrant us in reversing the decree, and that it must be affirmed.

*Affirmed.*