# CHARLESTON.

ANDREW DAVIS *v.* PRINCE E. LILLY

Submitted March 18, 1924.    Decided April 1, 1924.

1. EQUITY.—*Where Allegations in a Bill Sufficient to Support Decree, Specific Prayer Not Necessary.*

   Where the allegations of fact in a bill are sufficient to support a decree and there is a prayer for general relief, a decree may be based thereon although there is no special or specific prayer for the relief granted. (p. 152).

2. PRINCIPAL AND AGENT.—*Agent Personally Responsible on Contract Where Agency Undisclosed.*

   A person contracting as agent will be personally responsible, where, at the time of making the contract, his agency is undisclosed. (p. 153).

3.  REFORMATION OF INSTRUMENTS.—*To Warrant Reformation for Mistake, It Must be Mutual; Mistake of Scrivener in Drawing Deed Mutual, for Which Equity Will Reform.*

    Generally, to warrant equity to reform a deed for mistake the mistake must be mutual; but the mistake of a scrivener in preparing a deed is regarded as the mistake of both parties, he being regarded as the agent of both.    (p. 153).

4.  COMPROMISE AND SETTLEMENT.—*Compromise Between Parties Competent to Contract Cannot be Affected by a Subsequent Investigation or Result.*

    A compromise of a doubtful question, either of law or fact, where fairly made between parties competent to contract, is binding and can not be affected by any subsequent investigation or result.    (p. 154).

    McGINNIS, JUDGE, absent.

Appeal from Circuit Court, Raleigh County.

Suit by Andrew Davis against Prince E. Lilly.    From a decree for plaintiff, defendant appeals.

·    *Reversed.*

*McGinnis & McGinnis,* and *C. W. Dillon,* for appellant.
*J. W. Maxwell,* for appellee.

MEREDITH, PRESIDENT:

This is a suit in equity to enforce payment of an alleged balance due on the purchase price of certain land and buildings sold and conveyed defendant.    No lien being reserved in the deed, plaintiff invokes equity jurisdiction on the ground of mutual mistake.    Plaintiff was awarded part of the relief prayed for and defendant appeals.

The controversy arose in this way.    On August 29, 1919, plaintiff with his wife entered into a written contract with defendant whereby they agreed to sell and he agreed to buy all the coal, with the customary mining rights, in, upon and under two tracts of land containing approximately 120 acres and 23 acres respectively, at $150 per acre, $7000 of the purchase price to be paid on delivery of deed, the balance to be paid in two equal payments at six and twelve months, with interest.    This contract also contained the following optional clause:

"Said deed shall also contain a provision that said Lilly and his assigns, may at any time within two years thereafter, upon written notice to said Andrew Davis, select so much of the surface of said land lying between the C. & O. track and the county road, and running back from Cabell up Big White Stick Creek to the Perry Davis line, for the operation of said coal, and thereupon shall have the right to purchase the said surface at the price of Three Hundred Dollars ($300.00) per acre, cash; and further, if sufficient surface is not included in the above described area shall also have the right likewise to select surface area on the opposite side of the railroad track, and adjacent to the above described area, at the price of Four Hundred Dollars ($400.00) per acre, *and if this store house and dwelling is taken the said Lilly shall pay $3000.00 therefor and about an acre of land around them, cash,* and in addition to the payment per acre for said surface, if the dwellings now located thereon shall be included in such selection, said Lilly or his assigns shall pay for each of said dwellings so selected the price of Seven Hundred Dollars ($700.00), to said Andrew Davis, the said parties of the first part will thereupon execute apt and proper conveyance of such surface."

By deed dated November 22, 1919, plaintiff and his wife conveyed to defendant the coal and mining rights at $150 per acre. There is no controversy over the purchase price of the coal; but in the coal deed there was inserted an option clause for the sale and purchase of the surface land and buildings mentioned and described in the option clause in the original contract. The option in the coal deed reads as follows:

"In consideration aforesaid the said parties of the first part do further grant unto the said party of the second part, his heirs or assigns, the exclusive right and privileges for the term and period of two (2) years from and after the date hereof to select and purchase so much of the surface of the lands aforesaid lying between the Chesapeake and Ohio Railway track and the county road running back from Cabell up Big White Stick to the Perry Davis line for the operation of said coal at the price of Three Hundred ($300.00) Dollars per acre to be paid in cash, and if sufficient surface is not embraced in the above described area, the said party

of the second part, his heirs or assigns shall also have the right to select surface area on the opposite side of the railroad track and adjacent to the above described area and purchase the same at the price of Four Hundred Dollars ($400.00) per acre to be paid in cash, and if the store-house and dwelling on said land is taken, the said party of the second part, his heirs or assigns, shall pay therefor the sum of Three Thousand Dollars ($3000.00) in cash for the same about one acre of land around them, and in addition to the payment per acre of the price aforesaid for said surface, if the dwelling now located thereon shall be included in the area of surface selected, the said party of the second part, his heirs or assigns, shall pay therefor the sum of Seven Hundred Dollars ($700.00), and the said parties of the first part hereby agree and bind themselves to convey said surface then selected as herein provided to the party of the second part, his heirs or assigns by an apt and proper deed with general warranty of title, free from all encumbrances.''

By deed dated October 9, 1920, plaintiff and his wife conveyed to defendant two parcels of land, except the coal, one of 26.93 acres and the other of 21.52 acres, parts of the tracts mentioned in the original contract; however, they do not include the portions of surface land covered by the option contained therein, and this deed distinctly provides that ''nothing herein contained shall be construed as in any way affecting the right granted by the parties of the first part to the party of the second part by the deed aforesaid (referring to the coal deed of November 22, 1919) to purchase certain surface and buildings in said deed mentioned and described.''

A short time before the expiration of the option defendant notified plaintiff, after having made a survey of the properties, that he elected to buy a tract of 6.20 acres lying between the Chesapeake and Ohio Railway track and the county road, and also a tract of 1.15 acres on the opposite side of the railway track. On the two tracts there were four houses,—two four room dwellings on the 6.20 acre tract, and a storehouse and a dwelling house on the 1.15 acre tract. On November 19, 1921, plaintiff and his wife conveyed these two parcels

with the buildings located thereon, "in consideration of one hundred dollars cash in hand paid and other considerations not herein set forth, the receipt of all of which is hereby acknowledged," as stated in the deed. The transaction was closed between plaintiff and defendant's attorney, the defendant being absent. At that time a controversy arose over the amount that was to be paid, plaintiff contending that he was to be paid $300 per acre for the 6.20 acres, or $1860, and $700 for each of the dwelling houses located thereon, making $3260 for that tract; he does not seem to have contended then that he was to receive more than $3000 for the 1.15 acre tract, though that tract included a dwelling house as well as the storehouse. Defendant's attorney contended that plaintiff was not entitled to $700 each for the dwellings on the 6.20 acres, nor for the dwelling on the 1.15 acres, but finally agreed that he would pay $1860 for the 6.20 acres including the dwellings thereon, and $3700 for the 1.15 acres, or a total of $5560. Deducting $5.50 for revenue stamps for the deed, he paid plaintiff $5555.50 and plaintiff delivered the deed. This suit is to enforce payment of the purchase price of the two dwellings located on the 6.20 acre tract, under the original option; it purports to be a suit for specific performance of that original optional contract, which plaintiff asks the court to enforce by requiring the defendant to pay him $1400 for the two houses, and in default of payment that the 6.20 acres may be sold to satisfy his claim. It will be observed that there is a material difference between the option of purchase of the surface land and buildings as shown in the original contract dated August 29, 1919, and that shown in the coal deed dated November 22, 1919. That difference gives rise to the present controversy.

Plaintiff in his bill says that this variance in the two options was brought about by the mutual mistake of the parties; he does not in terms ask for a correction of the option clause in the deed of November 22, 1919, but says that the option contained in the contract of August 29, 1919, is the true and correct agreement and this is the contract which he prays may be enforced. He further says that all the deeds mentioned were prepared by defendant's attorney;

that when the last deed, that of November 19, 1921, conveying the 6.20 acres and 1.15 acres, was executed and delivered, a discusion arose between him and defendant's attorney over the amount to be paid him, plaintiff insisting that he was entitled to receive $1400 more for the two houses on the 6.20 acres and the attorney contending that he was not; that the attorney took him to the county clerk's office and there read to him from the records the option clause contained in the deed of November 22, 1919, the plaintiff all the while believing he was reading the option clause contained in the original contract of August 29, 1919, and hence by the mutual mistake of plaintiff and defendant's attorney he was paid only the sum of $5560; that later upon reading the original contract and upon defendant's return, he took up with him the matter of the payment of the additional $1400 and he then informed him he was acting in the purchase for a corporation and would recommend the payment thereof by the corporation, but stated that he would have to await the return of its manager, who was then absent from the state.

Defendant demurred to the bill and by answer he denies that there was any mutual mistake; he denies that under the original option of August 29, 1919, the plaintiff was to be paid $700 for each of the two dwellings on the 6.20 acre tract, but says that this tract was to be paid for at $300 per acre and there was to be no additional consideration for the two dwellings thereon. He further says that the $700 provided for in the option contract and in the deed of November 22, 1919, ''to be paid for dwellings, had reference to dwellings upon other lands and not upon the land lying between the Chesapeake & Ohio track and the counyt road'' for which he was to pay $300 per acre; that he never agreed to pay for the houses upon the surface lying between the county road and the Chesapeake & Ohio track other than the sum of $300 per acre; he denies that the failure to provide in the deed of November 22, 1919, for the houses upon the land lying between the county road and the railroad track was occasioned by the mutual mistake of the parties; that neither he nor his attorney ever understood or believed that the option clause in the deed or the original contract

provided for the payment for the houses located upon the surface land lying between the county road and the railroad track; that at the time of the delivery of the deed of November 19, 1921, plaintiff had a controversy with defendant's attorney over the construction of the option, and that they examined and read the optional clauses, both in the original contract and in the coal deed, and that plaintiff executed and delivered the deed of November 19, 1921, with full knowledge that defendant's attorney denied all liability of defendant for the payment of $700 each for the two dwellings on the 6.20 acre tract under the terms of the contract of August 29, 1919, or the coal deed of November 22, 1919; he also denies that he promised plaintiff to recommend to his corporation that it pay the additional $1400; he does admit that he told plaintiff he would see if he could not arrange for the payment of some compensation in order to avoid litigation, but not because he was legally liable.

The court corrected the optional clause in the coal deed of November 22, 1919, so as to make it read like the optional clause in the original contract of August 29, 1919; it found that under this contract defendant was to pay $1400 for the two dwellings on the 6.20 acre tract, in addition to the price of $300 per acre, and $3000 for the 1.15 acre tract, including the storehouse and dwelling house located thereon; that there was owing plaintiff the sum of $700 with interest from the date of the deed, November 19, 1921, being the balance due on the two dwellings on the 6.20 acres, and directed a sale of that tract in default of payment. In effect, the court gave defendant credit for the overpayment included in the $3700 paid for the 1.15 acres and two buildings thereon.

We will consider the grounds urged against this decree in order.

1. It is insisted that the demurrer to the bill should have been sustained; that the bill shows on its face that plaintiff has a mere money demand for the balance of the purchase price; that he has an adequate remedy at law. But would he have any remedy at law if the option clause in the coal deed stands? We think not. That clause does

not provide for payment of $700 each for the two dwelling houses on the 6.20 acres, the tract described therein as lying "between the C. & O. Railway track and the county road running back from Cabell up Big White Stick to the Perry Davis line." There is quite a difference between the option clause in the contract and that in the coal deed; the original option provides that defendant may select: (1) surface land lying between the C. & O. Ry track and the county road, at $300 per acre; (2) if that be not sufficient for the operation of the coal, then he may select surface land on the opposite side but adjacent thereto at $400 per acre; (3) but if the store house and the dwelling house (on the south side of the track) be taken, then defendant shall pay for these two buildings, including about an acre of ground around them, $3000; and (4) "if the dwellings now located thereon (meaning the 6.20 acre tract) shall be included in such selection," then he shall pay for such dwellings so selected $700 each. In the light of the evidence, we think this is a fair construction of that option. Clearly the price of $3000 included the price for the store house and dwelling house and about one acre around them,—the 1.15 acre tract; hence the price of $700 "for each of said dwellings so selected" could not refer to the dwelling on the 1.15 acre tract; then to what dwellings did it refer? Defendant in his answer says it refers to dwellings on other lands belonging to plaintiff, but we find no evidence in the record that plaintiff had any lands on which there were any dwellings other than the 6.20 acre tract, except the 1.15 acres where the single dwelling stood. It therefore necessarily refers to the dwellings on the 6.20 acres. This construction is strengthened by the fact that the words "and if this store house and dwelling is taken, the said Lilly shall pay $3000 therefor and about an acre of land around them cash" were interlined in the typewritten contract. Without these words, the defendant was to pay $700 for each of the dwellings that might be taken; but with them in, he was not to pay $700 for the dwelling on the south side or 1.15 acre parcel, because the price of that dwelling was included in the $3000 to be paid for the "store-house and dwelling and about an acre of

land around them.'' Now since there is no provision in the coal deed for payment of the sum of $700 for *each* of the *dwellings* on the 6.20 acre tract, and as that deed was executed after the original optional contract was executed, and hence must, as contended by defendant, be considered as a substitute for the original option, so long as that clause stands in the coal deed, plaintiff could have no recovery for these dwellings in an action at law; nor indeed, could he have recovery in equity; because when he makes his demand he is at once confronted with his own deed which gives defendant the right to buy this tract at $300 per acre; this, of course, would include the dwellings without any additional compensation therefor.

But plaintiff says the option clause as changed by insertion in the coal deed was executed by mutual mistake; his counsel argues that this gives equity jurisdiction. That equity has jurisdiction in case of mutual mistake can not be doubted. But defendant's counsel reply that plaintiff did not ask to have the mistake corrected. He does not specifically pray for it, but he does ask relief that could not be granted without the mistake being corrected and also prays for general relief; this is sufficient. Where the allegations of fact in a bill are sufficient to support a decree, and there is a prayer for general relief, a decree may be based thereon, although the relief granted is not specifically prayed for. *Stewart* v. *Tennant,* 52 W. Va. 559, 44 S. E. 223; *Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603. We therefore conclude that the bill is not subject to demurrer.

2. It is contended by defendant's counsel that The New River Company should have been made a party defendant. It was for that company that defendant was acting as agent when he acquired all these properties; of that there can be no doubt. But it is not claimed by defendant that plaintiff knew this until after the last deed was executed and delivered. All these contracts and deeds were made in the name of the defendant. He signed the original contract; the deeds were made to him. The name of The New River Company nowhere appears in any of them. Defendant's agency was nowhere disclosed in any paper or in any transaction until after the final deed was made. Even though

defendant was acquiring these lands for the purpose of re-conveying them to the company, that fact would not neces-sarily make him the company's agent. He could have ac-quired the lands on his own account; if he was acting as agent merely, but made the contract in his own name, with-out disclosing his agency until after the contract was made, then plaintiff could treat him as the sole contracting party. "It is well settled that a person contracting as agent will be personally responsible, where, if at the time of making the contract, he does not disclose the fact of his agency." *Poole* v. *Rice,* 9 W. Va. 73; *Waddill* v. *Sebree,* 88 Va. 1015, 14 S. E. 849; 2 C. J. 816. Plaintiff therefore may main-tain this suit against the agent alone and The New River Company is not a necessary party.

3. Was there a mutual mistake in transferring the option from the original contract to the coal deed? Defendant claims there was not, though he testifies that he thought the two options were alike. He says, "I thought they were the same;" he was not aware that there was any difference be-tween them. Davis says that he thought they were the same. Why the option in the coal deed was made to differ from the option in the original contract is not explained on any ground except that it was made through a mistake. The coal was conveyed at $150 per acre, after survey. There was no new consideration calling for this change in the option. It ap-pears from the testimony of defendant's attorney that he prepared the coal deed; that at that time he had before him either the original contract or a copy of it and that he pre-pared the coal deed in accordance with his own and defend-ant's understanding of plaintiff's rights under the original option; that the coal deed was prepared under defendant's instructions, and that the wording of the option as carried into the coal deed is his and defendant's interpretation of the provisions of the original option. Defendant says that he thought that the option in the one had the same meaning as it had in the other; in other words, he did not understand that there had been any change; it would seem therefore that a mistake was made by defendant's attorney in preparing the coal deed. While defendant denies that there was any mutual

mistake, yet "The demand of mutuality does not, however, apply to a mistake that is one purely that of a scrivener." *Ferrell* v. *Ferrell,* 53 W. Va. 515, 44 S. E. 187. The scrivener is regarded as the agent of both parties, and his mistake is deemed to be the mistake of both. 20 Am. & Eng. Ency. Law (2d. ed.) 823. We are therefore of opinion that the optional provision in the deed was made to vary from the optional provision in the contract through the mutual mistake of the parties, and unless the plaintiff is otherwise barred, he is entitled to have the coal deed corrected so as to make the option contained therein correspond to the option in the original contract.

4. It is contended that the language in both forms of the option is ambiguous; that may be granted. But when it is shown that there were on the 6.2 acre tract two dwellings and on the 1.15 acre tract a store-room and a dwelling, the ambiguity disappears. In case the defendant took the land between the railway and the county road (north side), he was to pay $300 per acre therefor; if he took land on the opposite or south side he was to pay $400 an acre therefor, but if the latter selection included the storehouse and the dwelling and about an acre around them, then he was to pay $3000 for the two buildings and the parcel of "about an acre around them". True, the provision for $700 for each of the dwellings then located on the land which should "be included in such selection". To what dwellings does it refer? Certainly not to the dwelling on the 1.15 acre parcel; the price of that is included in the $3000. Defendant's answer says it refers to dwellings on other lands then owned by plaintiff, but it is not shown that he owned any other dwellings on land that could have been selected; so this provision must of necessity refer to the dwellings on the 6.2 acres, as we have already shown.

When we analyze the option contained in the coal deed, we find much greater ambiguity. Some matters in it are clear. Defendant was to pay (1) $300 per acre for the land he should select lying between the railway and the county road,—the 6.2 acres on which the two dwellings were located; (2) $400 per acre for the land he should select on the opposite

side; (3) but if the storehouse and dwelling be included, he was "to pay therefor the sum of $3000 in cash for the same, about one acre of land around them, and in addition to the payment per acre at the price aforesaid for said surface, if the dwelling located thereon shall be included," he should pay therefor $700. This latter provision may mean that defendant was to pay $3000 for the store-house, dwelling and about an acre around them; but to give it that meaning we must reject the remaining words "and in addition to the payment per acre at the price aforesaid for said surface, if the dwelling located thereon shall be included, he shall pay therefor $700." Literally it says he was to pay $3000 for the store-house, dwelling, and about an acre around them, in addition to the price per acre of $400 and the price of $700 for the dwelling. We think the whole difficulty started from an error in the interlineation in the original contract of the words we have italicised; that it was agreed originally that defendant should pay $700 for each dwelling house; after the original contract was written that way, it was seen that it might give the defendant the right to take the store-house without paying extra for it; they then inserted the provision "and if this store-house and dwelling is taken, the said Lilly shall pay $3000 therefor and about an acre of land around them cash," thus intending to modify the contract as originally prepared so that defendant would not have to pay $700 for the dwelling that went along with the store-house at $3000. Under these circumstances, defendant's attorney claimed defendant should not pay $700 extra for this dwelling; that $3000 was the purchase price of the store-house, dwelling and the 1.15 acres. We do not wonder that there was a controversy over the amount to be paid.

5. The final contention of defendant is that the whole matter was compromised, with full knowledge of the parties, and therefore plaintiff is estopped from impeaching the compromise. It appears that on the day the deed was executed, plaintiff and his wife at defendant's request went to Beckley, the county seat of Raleigh County, where they met defendant's counsel. The deed was prepared by defendant's attorney and there is no controversy over its contents. No question arose

until they began to figure the amount to be paid; plaintiff claimed pay for the two houses on the 6.20 acres; defendant's counsel claimed there was no provision in the option for that and they had the original coal deed before them. They discussed the matter for some time and it is likely that plaintiff consulted counsel of his own, as he seems to have left the office where they were and gone out for that purpose. But whether he did so or not, when he came back he refused to accept defendant's offer, which then seems to have been but $4860; whereupon defendant then offered $5560; they went to the Bank of Raleigh where a formal tender was made and rejected. Plaintiff and his wife started home and after going a considerable distance, decided to accept the $5560; they came back and again met defendant's attorney. Before acceptance, plaintiff and defendant's attorney went to the county clerk's office to examine the record. We think it quite clear that the sole object of going there was to examine the record as to the original option so as to compare it with the coal deed option. During their discussion that afternoon they had the coal deed before them, but they did not have the original contract; and we have no doubt defendant's attorney correctly read to plaintiff the option clauses in both the original contract and in the coal deed; plaintiff says he, defendant's attorney, read what he termed "Contract No. 1" and "Contract No. 2." Besides, the plaintiff for a number of years was a public school teacher and has a fair education, so he could read these options for himself. He says he had decided to accept the $5560 before he got back, so what transpired in the court house did not affect his decision. With full knowledge of all matters in controversy, he accepted the money and delivered the deed. No fraud or overreaching is shown or attempted to be shown. Defendant's attorney was instructed to bring suit for specific performance of the option if plaintiff did not accept and after thinking the matter over, plaintiff returned and completed the transaction, doubtless in order to avoid a lawsuit. We can see no other reason for his change of mind as there was no other reason why he should hurry. He still had his land and defendant could not get it without payment. Does his acceptance bar him in this

suit? That there was a bona fide dispute or controversy between plaintiff and defendant as to the amount to be paid under the option there is no doubt. Indeed, there was plenty of room for doubt. Both options are of doubtful meaning. Defendant claimed then and claims now he paid him $700 too much, but that he did so in order to effect a settlement; that it was so accepted by plaintiff. There is nothing in the evidence tending to show that anything was left open and unsettled. It was not until later, after plaintiff had read the original contract, that he took up the matter of further payment with defendant. Even if defendant at a later time had promised to have the company pay the balance it would not have been binding as there was no new consideration for that promise. Such a promise defendant denies. We think the evidence clearly shows there was a compromise,—an agreement whereby each surrendered part of his claim or demand against the other and settled the matter. "Where a compromise of doubtful right *is fairly made between the parties,* it is binding and can not be affected by any subsequent investigation or result; and this is so, whether it is a compromise of a doubtful question of law or fact." *Korne* v. *Korne,* 30 W. Va. 1, 3 S. E. 17. Compromises are favored in law, especially so when they are fairly made. *Caperton* v. *Caperton,* 36 W. Va. 637, 15 S. E. 149. While we are led to believe that under the original contract plaintiff would be entitled to his decree for $700, because the option was changed to a different one in the coal deed through the mutual mistake of the parties, yet he was aware of that mistake when he executed the last deed. We would affirm the decree if we could do so and keep within the law; but we do not see how, upon this record, the compromise made with full knowledge of the facts, can be set aside or ignored.

We must therefore reverse the decree and dismiss plaintiff's bill.

*Reversed.*