## CIRCUIT COURT OF FAIRFAX COUNTY

Kirkpatrick et ux.

    v.

First American Title Ins. Co. et al.

            Case No. (Law) 61548

Smith et ux.

    v.

First American Title Ins. Co. et al.

            Case No. (Law) 59820

            February 25, 1985

By JUDGE F. BRUCE BACH

This matter is before me on the demurrers filed by the five Defendants named in the *Kirkpatrick* and *Smith* Motions for Judgment. The two Motions for Judgment are practically identical; therefore, in an attempt to simplify the analysis of these demurrers, all references are to the *Kirkpatrick* Motion for Judgment. Because Roy E. Mason and Tri-Centennial Development Corporation ("Mason/TCDC") have not demurred to the *Smith* Motion for Judgment, nothing

in this letter pertains to Count VIII of *Smith* as to those defendants.

After hearing oral argument, reviewing the pleadings and memoranda of law submitted by counsel, it is my decision that United Mortgage and Investment Corporation's ("United Mortgage") Demurrers 2, 4, 5, 6, 8, 9; Community Federal Savings and Loan Association's ("Community Federal") Demurrers 1, 3, 4, 8, 9, 10; First American Title Insurance Company's ("First American") Demurrers 2, 3, 5, 6, 7 and Mason/TCDC's Demurrers 2, 4, 5, 6 are overruled. United Mortgage's Demurrers 1, 3 (First American is dismissed as to Count I), 7, 10, 11, 12, 13, Community Federal's Demurrers 2, 5, 6, 7, First American's Demurrers 1, 8, and Mason/TCDC's Demurrers 1 (as to Mason) 3, 7 are sustained with ten days leave to amend the Motions for Judgment. Because of the disposition of the above demurrers, it is unnecessary to consider United Mortgage's Demurrer 14, Community Federal's Demurrer 11, First American's Demurrers 4, 9 (filed only in Law 59820) and Mason/TCDC's Demurrer 8.

Unless Plaintiffs amend the Motions for Judgment to allege sufficient facts to state a cause of action, Counts II, V, VI, and VII are dismissed; and Mason is dismissed as to Count VIII. First American is dismissed as to Count I. Further, the pleadings are defective because the breach of contract claim against TCDC does not arise from the same transaction or occurrence as the breach of contract/wrongful disbursement of loan proceeds claim against United Mortgage and Community Federal.

This action involves the disbursement of construction loan proceeds that allegedly resulted in the filing of mechanic liens. The Defendants argue that "wrongful disbursement of loan proceeds" has never been recognized as a cause of action in Virginia, and therefore, Count I must be dismissed for failure to state a claim upon which relief may be granted. Other jurisdictions have recognized such a cause of action when a construction mortgage is involved. "[A] construction mortgage may have distinctive features in that the mortgagee may become liable in tort to the mortgagor if reasonable care is not exercised in disbursing funds to protect the mortgagor from mechanics liens filed against the property." 55 Am. Jur. 2d *Mortgages*, section 14 (1973) (citing *Falls Lumber*

*Co. v. Heman Trust Co.*, 181 N.E.2d 713 (Ohio App. 1961)). Because Virginia courts have never explicitly refused to recognize wrongful disbursement of loan proceeds, this Court will permit the Plaintiffs to go forward with this novel cause of action.

The mere relatiwers to interrogatories:

> As of July 1, 1981, the total population of Fauquier County was 35,762; the poll of prospective jurors consists of only 13,008 registered voters. In comparison with those figures, it is significant to note that during the one year period from October 1, 1979, to September 30, 1980, The Fauquier Hospital had 3,732 admissions, 11,613 emergency room visits, and more than 25,000 other out-patient visits. The total of 424 persons presently employed by the defendant Fauquier Hospital alone would represent 3% of the total jury poll of 13,008 persons, if all of them were registered voters living in Fauquier County.

The plaintiff contends that he would be highly prejudiced by the selection of a jury in Fauquier County, and that he would have no such benefit from the selection of a jury in Richmond, where he would be unknown.

But, in *Ramsay v. Harrison*, 119 Va. 682 (1916), the Supreme Court held that affidavits in support of the motion for a change of venue should state the facts and circumstances tending to show that a fair and impartial trial cannot be had where the case is pending and not the mere belief or opinion of the affiants. Less than this is not sufficient under the statute permitting a change of venue for good cause shown.

Another answer to this objection is that if the trial court in Fauquier County could not impanel a fair and impartial jury from Fauquier County, then the court could cause as many jurors as may be necessary to be summoned from any other county or city, to be so summoned by the sheriff until such time as a fair and impartial jury was selected. See Code § 8.01-363. The court could do this at such time as an ineffectual effort had been made to obtain a fair and impartial jury.

The second issue raised by the plaintiff to cause this court to retain venue is that it would be more convenient to the witnesses to try the case in Richmond. The plaintiff claims that he will call as expert witnesses Dr. Joseph R. Macys, an orthopammunity Federal responsible for United Mortgage's actions based upon an alter ego theory of piercing the corporate veil. In order to apply the alter ego theory and hold a parent corporation liable for the acts of its subsidiary "it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner so as to defraud and wrong the complainant, and that unjust injury will be suffered by the complainant as a result of such domination unless the parent corporation be held liable." *Beale v. Kappa Alpha Order*, 192 Va. 382, 396 (1951). There are no factual allegations in the Motion for Judgment that Community Federal exercised undue domination over United Mortgage or that Plaintiffs will suffer unjust injury if he is unable to hold Community liable for United Mortgage's alleged wrongful disbursement of loan proceeds. There is no allegation that United Mortgage is unable to assume financial responsibility for any judgment that might be entered in favor of the Plaintiffs. Although the Plaintiffs allege that all decisions regarding funding were controlled by Community Federal, this allegation does not show undue domination of United Mortgage by Community Federal, nor does it demonstrate any wrongful act by Community Federal.

First American, United Mortgage and Community Federal all demurred to Count III, the Plaintiffs' demand for punitive damages. They assert that Plaintiffs may not request punitive damages in a simple contract action. Punitive damages are not available in Virginia in ordinary contract actions; however, they are available where the breach of contract amounts to an independent, willful tort, due to malicious, wanton, or oppressive behavior by the breaching party. *Goodstein v. Weinberg*, 219 Va. 105 (1978).

Because the purpose of punitive damages is to punish or deter a defendant for his malicious conduct, the plaintiff must plead a substantive cause of action and allegations regarding the mental state of the defendant. *See,*

Dobbs, *Remedies* 205 (1972). Courts most often use the words malicious, reckless, or oppressive to describe the requisite state of mind of the defendant. Redden, *Punitive Damages*, section 3.1 (1980). In addition to alleging the tort of wrongful disbursement of loan proceeds, the Plaintiffs have also alleged that the Defendants acted "in willful, wanton, and reckless disregard of the rights of Plaintiffs . . . ." (para. 41). This allegation sufficiently describes the Defendants' state of mind. A factual determination must be made at trial as to whether the Defendants' conduct constitutes actual malice, or such recklessness or negligence as to show conscious disregard of the rights of others. *Giant of Virginia v. Pigg*, 207 Va. 679 (1967).

In order to recover punitive damages against the master for the unlawful act of his servant, the burden is on the plaintiff to show that such act was either previously authorized or subsequently ratified. *Virginia Ry. & P. Co. v. Deaton*, 147 Va. 576 (1927). Although the Plaintiffs have not used the terms "authorized" or "ratified" with regard to Community Federal's dealings with United Mortgage, they have alleged sufficient facts to permit the inference that United Mortgage's actions were authorized. In paragraph 27, the Plaintiffs allege "United was acting within its authority as an agent of Community, that United was a mere local alter ego of Community, that Community was funding the loan . . . that all decisions with regard to funding and not funding were made or controlled by Community . . ."

Both Community Federal and United Mortgage argue in their memoranda that because the Plaintiff is not entitled to a joint judgment against them as principal and agent respectively, Count IV is demurrable. Both the alleged agent (United Mortgage) and the alleged principal (Community Federal) are liable on contracts entered into by an authorized agent on behalf of an undisclosed principal. *Waddill v. Sebree*, 88 Va. 1012 (1892). "[W]here a person enters into a simple contract . . . in his own name, when he is in fact acting as the agent of another and for his benefit, without disclosing his principal, the other party to the contract may, as a general rule, hold either the agent or his principal, when discovered, personally liable on the contract. But he cannot hold

both." *Leterman v. Charlottesville Lumber Co.,* 110 Va. 769, 772 (1910). The Plaintiff, upon learning the identity of the undisclosed principal, must elect whether to hold the principal or agent liable. A plaintiff cannot execute a judgment against the principal and agent jointly. *Id.* at 772.

Other jurisdictions recognize that "it may be necessary to commence one action against both (principal and agent) in order to ascertain the facts - that is, to ascertain whether, in fact, there was an undisclosed principal." 3 Am. Jur. 2d *Agency*, section 342 (1962). Because it is necessary to determine whether United Mortgage was in fact an agent of Community Federal, it is proper in this case to permit the Plaintiff to bring an action for breach of contract against both, even though it can obtain a judgment based upon breach of contract against only one of these two Defendants.

All the Defendants assert that the allegation of fraud has not been pled with the required specificity. "Fraud is a conclusion of law from facts, and it is a well-settled rule of pleading, both at law and in equity, that the facts out of which the fraud arises must be alleged as well as proved to justify relief on that ground." *Koch v. Seventh St. Realty Corp.,* 205 Va. 65 (1964).

Plaintiffs allege that they were not provided with a draw schedule at the time of settlement, and further, that First American and United Mortgage purposefully concealed the existence of this draw schedule because they knew it would have been unacceptable to Plaintiffs. (Para. 19 and 20). The Plaintiffs also allege that First American and United Mortgage, in violation of the loan agreement with Plaintiffs, issued three draws to TCDC without notice to Plaintiffs and without including Plaintiffs as drawees on the checks (para. 23). These allegations reflect a breach of agreement, not fraud. There is no allegation that these draws were in accordance with the "concealed draw schedule." Moreover, there are no specific facts alleged with regard to the "concealed draw schedule." The Virginia Supreme Court noted in *Tuscarora v. B.V.A.,* 218 Va. 849, 858 (1978), that allegations are too vague, indefinite, and conclusory to state a cause of action when "[t]he identities of agents, officers, and employees . . . who are alleged to have perpetrated the fraud are

not revealed, or the details of the time and place where the [allegedly] fraudulent acts occurred." Moreover, there are no factual allegations regarding the materiality of the alleged fraudulent concealment, since there is no allegation that any money was actually disbursed according to the terms of the "concealed draw schedule."

Mason asserts that he should be dismissed from both causes of action because the allegation that TCDC was his mere alter ego is stated in a conclusory manner and therefore insufficient at law. Although the general rule is that the corporate entity will be respected, *Garnett v. Ancarrow Marine, Inc.*, 211 Va. 755 (1971), in extraordinary circumstances the corporate entity will be disregarded to prevent fraud and achieve equity. *Beale v. Kappa Alpha Order*, 192 Va. 382 (1951). Generally, if shareholders treat assets of the corporation as their own, use corporate funds to pay private debts, fail to keep separate corporate books, fail to hold shareholders or directors meetings, fail to issue stock, or generally disregard corporate formalities, courts will often find that the corporate entity is a mere agent of the stockholder. The mere fact that the shareholders are sloppy in administering corporate affairs, however, is not sufficient to warrant piercing the corporate veil; there must also be fraud or basic injustice. *Id.* at 396. Plaintiffs do not allege that TCDC is in any financial difficulty or that any injustice will result from holding TCDC, rather than Mason, primarily liable for any injury. Not only have the Plaintiffs failed to allege any injustice that would warrant piercing TCDC's corporate veil, they have also failed to allege any fraudulent conduct on the part of Mason that would warrant piercing the corporate veil.