# CHARLESTON.

CAPERTON'S ADM'R *v.* CAPERTON'S HEIRS *et al.*

STILES *et al. v.* WILLIAMS'S ADM'R *et al.*

Submitted January 26, 1892.—Decided April 23, 1892.

COMPROMISE.
   Case wherein a compromise is *held* to bar further demand.

*J. W. Harris* and *J. Guy* for appellants.

*H. H. Marshall* for Maury's trustee.

*Campbell & Holt* for J. S. Craig.

*J. W. Davis* for Snead & Stebbins.

BRANNON, JUDGE :

The administrators of Allen T. Caperton, deceased, brought in the Circuit Court of Monroe county a chancery suit against said Caperton's heirs for the purpose of convening his creditors and administering his personal and real estate for payment of his debts, and for distribution ; and a decree was entered therein in 1877 subjecting to sale the lands of said Caperton, appointing Patton and Echols as special commissioners to make the sale, and empowering them to appoint such agents as they might think proper to aid them in making sale ; and under this power said commissioners appointed Craig to sell real estate under the decree for them.   Craig proceeded to act under such appointment, selling a small portion of a very extensive area of wild lands owned by the estate in Nicholas, Greenbrier and Webster counties, and doing other service touching the lands.

In February, 1882, the commissioners substituted in place of Patton and Echols sold all this land of the estate in Webster, Nicholas and Greenbrier counties to Camden, and the sale was confirmed, and a large sum of money paid by Camden was brought into court.   In March, 1890, after

this fund had been paid into court, Craig filed his petition stating his appointment as such agent; that it was later agreed between him and the commissioner that he should have charge of the lands of the estate in the three counties, and make sale of any of them, keep off trespassers, pay taxes, keep the lands in possession, and do such work and perform such services as were necessary to protect the interests of the heirs and creditors; that he took charge of the Nicholas and Webster county lands, performed various services specified in the petition, among them that he sold parts of said lands; that the services were rendered from September, 1877, to November, 1889; that the commissioners promised him ten *per cent.* on the gross amount of all sales made out of the first available funds; that said ten *per cent.* amounted to six thousand, seven hundred and seventy two dollars and forty cents and that his services were worth that sum; that said lands had all been sold and the proceeds paid into court; and prayed that his lien on said fund be enforced, and his part paid over to him.

Among other matters required to be reported upon by an order of reference in the case, the account of Craig as agent was directed to be stated. In this statement Craig was allowed three thousand, seven hundred and fifty dollars as an "amount per agreement of parties by their counsel allowed on account of services as set forth in the petition of J. S. Craig;" and besides that allowance, which was under a compromise, various allowances of ten *per cent.* commission are made to Craig for lands sold. Exception to these additional allowances was overruled, and Caperton's administrators as such and as special commissioners appeal from a decree decreeing to Craig a balance of nine hundred and ninety nine dollars and ten cents as due him.

Our opinion is that the compromise fixing three thousand, seven hundred and fifty dollars as compensation to Craig for services set forth in his petition is final and binding on him, precluding him from making any other charge for sales made by him or for service.

On the 19th of March, 1890, he filed in the case a petition alleging with clearness, comprehensiveness and detail the work he had done, the various services he had performed

touching the land, and that he had made sales of parts of said land, and that he was to get ten *per cent.* on the gross amount of all sales made out of the first available funds; that said ten *per cent.* amounts to the sum of six thousand, seven hundred and seventy two dollars and forty cents, and that his services in that behalf are reasonaably worth said sum of six thousand, seven hundred and seventy two dollars and forty cents, "independent of any special contract"—thus pleading his right specially on the contract between him and the commissioners, and also on the implied contract for what his service merited—the *quantum meruit.*

Certainly this petition covered the whole field of Craig's service in the case; certainly it covered sales for which the decree complained of allowed him pay in addition to the compromise sum of three thousand seven hundred and fifty dollars; for, as above stated, in specifying the service rendered and acts done under his agency, it alleged that he had sold parts of said land; and so it is that when, by compromise, he was allowed, as stated in the commissioner's report, three thousand, seven hundred and fifty dollars "by agreement of parties on account of service set forth in petition of James S. Craig," and when the commissioner also reports that "the claim of said Craig, as set out in his petition filed, has been compromised and adjusted at the sum of three thousand, seven hundred and fifty dollars," we may and ought to say that these commissions on sales, for which he is allowed in addition to said three thousand, seven hundred and fifty dollars, were covered and included in that sum by compromise.

The claim against the estate was of one general nature, and the parties, at least on one side, thought—reasonably thought—that they were adjusting finally all of Craig's demand growing out of his connection with the case. Why should they not think so? Compromises are favored by the law, and are construed liberally as adjusting all matters between the parties growing out of the transaction to which it relates, and not as leaving unsettled a fraction to constitute a bone of further strife and contention, unless it be clearly shown that such fraction was not included in the adjustment.

It is said that the amount claimed in the petition —six thousand, seven hundred and seventy two dollars and forty cents —is only on the Camden purchase. The petition does not say so. It does not mention it, except inferentially from the fact that it alleges the sale of all the land, and that the money had been brought into court. The sum of six thousand, seven hundred and seventy two dollars and forty cents is not ten *per cent.* of sixty seven thousand, six hundred and sixty one dollars and fifty three cents, the amount paid into court by Camden. The petition does not state that the demand is only for commission on the Camden sale. Does the language, "independent of special contracts," quoted above from the petition, exclude the sales made by Craig? What are the special contracts referred to? This language does not refer to contracts of sale made by Craig, but only that the services were worth in themselves the sum specified, regardless of his special contract with the commissioners. And, moreover, all services, including sales made by Craig, are pleaded as the basis of his demand in the petition, and it is alleged that his services are reasonably worth said sum of six thousand, seven hundred and seventy two dollars and forty cents. Suppose there had been a decree for that sum, would it not be *res-judicata,* and preclude further claim for sale commission? So it is as a compromise final. There is no question that the services rendered by Craig were useful and valuable to the estate in preserving its land, but we think the compromise closed his right.

As to interest, we leave it stand as it is. Craig was to be paid out of first moneys received. Disbursements were going on and moneys received, and Craig would be entitled to his three thousand, seven hundred and fifty dollars out of them, and probably the claim as to interest would not much vary the account if allowed. For these and other reasons we shall make no change in the account as to this.

Therefore the decree of 25th September, 1891, so far as it allows said Craig nine hundred and ninety nine dollars and ten cents, is reversed, and the case remanded, to have an account of said Craig's agency stated, not allowing therein

to said Craig anything for commission or service beyond said sum of three thousand, seven hundred and fifty dollars.

REVERSED IN PART. REMANDED.