SHARON JENKINS

*v.*

J. C. PENNEY CASUALTY INS. CO.

(No. 14607)

Decided July 14, 1981.

*Baer, Napier & Colburn* and *James Allan Colburn* for appellant.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, R. Gregory McNeer* and *Robert K. Emerson* for appellee.

MILLER, JUSTICE:

In this case we are asked to consider whether W. Va. Code, 33-11-4(9), relating to unfair insurance claim settlement practices, gives rise to an initial direct cause of action against an insurance company by a third-party claimant. We hold that it does, but not until the underlying suit against the insured has been resolved.

Sharon Jenkins sued the J. C. Penney Casualty Insurance Company contending that through its claims agents, it had breached its statutory duty by "not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear." W. Va. Code, 33-11-4(9)(f). Ms. Jenkins alleged that her car had been damaged in the amount of $177.00 by the clear negligence of the insurance company's insured in changing lanes and striking her vehicle. In addition to her property damage claim, she

sought punitive damages and damages for emotional distress.

The trial court granted a motion to dismiss on the basis that W. Va. Code, 33-11-4(9), could not be construed to give rise to a private cause of action. On this point, we believe the trial court was in error. However, because we do conclude that a direct suit against the insurance company cannot be maintained until after the underlying civil action against the insured is concluded, we affirm the judgment.

I.

Both parties acknowledge that whether a private cause of action exists based on a violation of a statute is determined under the standard set in Syllabus Point 1 of *Hurley v. Allied Chemical Corp.*, 164 W. Va. 268, 262 S.E.2d 757 (1980):

> "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

In *Hurley* we noted that our prior case law had not evolved a refined test but had recognized that the violation of a statute could give rise to a cause of action.[1] We also have

---

[1] *Hurley's* remarks on this point were:

"[W]e have said in negligence cases that the violation of a statute or ordinance is *prima facie* evidence of negligence. *See, e.g., Costello v. City of Wheeling*, 145 W. Va. 455, 461, 117 S.E.2d 513 (1960); *Barniak v. Grossman*, 141 W. Va. 760, 765, 93 S.E.2d 49 (1956); *see Scott v. Hoosier Engineering Co.*, 117 W. Va. 395, 185 S.E. 553 (1936). We stated the following qualification to this rule in

some general legislative confirmation of this principle under W. Va. Code, 55-7-9.[2] In *England v. Central Pocahontas Coal Co.*, 86 W. Va. 575, 104 S.E. 46 (1920), we suggested that the purpose of this statute was to preserve the right to bring a cause of action based on the violation of a statute in those situations where the statute contained a penalty or forfeiture, so as to preclude the assertion that the penalty or forefeiture prevented the bringing of a damage action.

In *Pitzer v. M.D. Tomkies & Sons*, 136 W. Va. 268, 271, 67 S.E.2d 437, 440 (1951), we recognized that while W. Va. Code, 53-6-1 and 53-6-3, relating to employment of underage children, imposed "[n]o civil liability . . . upon a defendant who violates [these] provisions . . . Code, 55-7-9, in general, permits the recovery of damages sustained by reason of the violation of any statute." Speaking of the same statute in *Flanagan v. Mott*, 145 W. Va. 220, 114 S.E.2d 331 (1960), we indicated that the violations had to be the proximate cause of the injuries.

Indeed, this Court's past acceptance of an implied cause of action for a statutory violation is deeply engrained. We are virtually the only jurisdiction that permits a private cause of action for violations of statutes requiring sidewalks to be in good repair.[3] *E.g., Costello v. City of*

---

Syllabus Point 1 of *Steiner v. Muldrew,* 114 W. Va. 801, 173 S.E. 891 (1934):

" 'The violation of a statute, intended for the protection of persons of a certain class, cannot be the basis of a cause of action on the part of persons not belonging to the class intended to be protected by the statute.' "

262 S.E.2d at 759.

[2] W. Va. Code, 55-7-9, provides:

"Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

[3] The general rule is found in a annotation in 88 A.L.R.2d 331, 354 (1963):

"The general rule is to the effect that in the absence of specific provisions imposing liability for noncompliance, a statute or ordinance which requires an abutting owner or occupant to

*Wheeling,* 145 W. Va. 455, 461, 117 S.E.2d 513, 517 (1960); *Barniak v. Grossman,* 141 W. Va. 760, 765, 93 S.E.2d 49, 53 (1956).

Turning to the statute in question, W. Va. Code, 33-11-1, *et seq.,* the insurance company contends that the *Hurley* test cannot be met because there is no indication that the statute was intended to cover injured third parties, but only insureds. Consequently, the plaintiff is not a member of the class protected by the statute. To buttress this point, the insurance company cites *Scroggins v. Allstate Insurance Co.,* 74 Ill. App.3d 1027, 393 N.E.2d 718 (1979), in which the court refused to imply a private cause of action based on a somewhat similar Illinois statute.

We do not follow the *Scroggins'* analysis since, after finding that the statute was intended to cover third party claims, it concluded that the insurer's duty always runs to its insured.[4] What *Scroggins* ignores is that if the statute creates a positive duty, this duty is independent of any insurance contract and a cause of action may be maintained based on the violation of the statutory duty. As previously noted, our law in regard to statutory violations is clear.

There can be little question in reviewing the entire Act that it is not limited to activities between the insured and the insurance company. Among the unfair claim settlement practices there are a number of broadly worded prohibitions which are equally applicable to third parties as well as insureds. W. Va. Code, 33-11-4(9)(a), (b), (c), (d), (f),

---

construct, reconstruct, or maintain in proper repair a sidewalk adjoining his premises does not impose upon him a duty to the public to comply with the ordinance, and hence does not, of itself, render him liable in damages for injuries sustained by a member of the public as the result of a defect in the sidewalk." (Footnotes omitted)

[4] *Scroggins'* statement as to this point is:

"While we agree that the statute and rule are apparently intended to cover third party as well as first party claims, plaintiffs' argument fails to recognize that the insurer's duty has always run to its insured in either context." 74 Ill. App.3d at 1034, 393 N.E.2d at 723.

(m) or (n).[5] Of particular significance, however, are the

---

[5] The entire text of W. Va. Code, 33-11-4(9), is:

"*Unfair claim settlement practices.* —No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

"(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

"(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

"(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

"(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

"(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

"(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

"(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

"(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

"(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

"(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

"(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

"(l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

"(m) Failing to promptly settle claims, where liability has

following subsections of W. Va. Code, 33-11-4(9), which make particular reference to both "insureds" and "claimants" and suggest a clear legislative intent that claimants are entitled to protection under this Act:

> "Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." W. Va. Code, 33-11-4(9)(k).

> "Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information." W. Va. Code, 33-11-4(9)(1).

We also note that subsection (j)[6] contains a specific reference to "insureds or beneficiaries" which is a further demonstration that the Legislature intended to be specific in identifying the class of persons designed to be protected as to certain subsections.

As earlier noted, *Scroggins* had found that third party claimants were covered by the Illinois act. The same conclusion has been reached in *Royal Globe Insurance Co. v. Superior Court*, 23 Cal.3d 880, 592 P.2d 329, 153 Cal. Rptr. 842 (1979), regarding a similar California insurance act. These are the only two cases that appear to have discussed the question of the class of persons covered by the unfair insurance practices act in any detail, although several other courts have addressed the question in a cursory

---

become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

"(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

[6] See footnote 5, *supra.*

matter.[7] We also conclude that third-party claimants are covered as a protected class under the act and, therefore, the first step in the *Hurley* test is satisfied.

The second step in the *Hurley* analysis is to determine whether from the act itself or from its legislative history a private cause of action was intended. We recognized in *Hurley* that "state statutes often have sparse legislative history or none at all, *see* Note, *Implied Causes of Action in the State Courts*, 30 Stanford L. Rev. 1243, 1252 (1978), and in its absence, a state court would be unable to utilize the [legislative history]." 262 S.E.2d at 762. W. Va. Code, 33-11-1,[8] makes reference to Public Law fifteen, seventy-ninth Congress, and declares the general purpose of our act is to define and prohibit unfair insurance trade practices. The Congressional act referred to contains a general

---

[7] Montana has without any extended discussion of the theory of implied statutory causes of action concluded that its statute on unfair settlement practices can give rise to a cause of action for a beneficiary under a health and accident policy. *First Security Bank v. Goddard*, 593 P.2d 1040 (Mont. 1979). In *Hi-Line Electric Co. v. Travelers Insurance Co.*, 587 S.W.2d 488 (Tex. Civ. App. 1979), the court construed its unfair claim settlement practice act as not providing a cause of action to a third party, but this was because the term "person" in the statute was statutorily defined to be a "consumer." A "consumer" was defined as one "who seeks or acquires by purchase or lease, any goods or services." 587 S.W.2d at 490. Several other courts without reference to the principles of implied statutory causes of action have concluded their statutes similar to our unfair settlement practices statute affords no relief. *Retail Clerks Welfare Fund v. Continental Casualty Co.*, 71 N.J. Super. 221, 176 A.2d 524 (1961); *Farris v. U.S. Fidelity and Guaranty Co.*, 284 Or. 453, 587 P.2d 1015 (1978); *see also Cosmopolitan Mutual Insurance Co. v. Nassau Insurance Co.*, 99 Misc.2d 1018, 417 N.Y.S.2d 835 (1979); Note, *The Unfair Claims Settlement Practices Act: a Private Cause of Action for Third Party Claimants Seeking Punitive Damages*, 6 U. Dayton L. Rev. 73 (1981).

[8] W. Va. Code, 33-11-1, provides:

"The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the act of Congress of March ninth, one thousand nine hundred forty-five (Public Law fifteen, seventy-ninth Congress), by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."

declaration that the regulation of insurance is a matter left to "the several States." 15 U.S.C.A. §1011, *et seq*. While there is no legislative history, the strong policy declaration in our statute against unfair insurance practices initially suggests the appropriateness of a private cause of action.

A possible counterbalance to this strong policy statement may arise from provisions in the statute itself that provide for an administrative remedy. Under W. Va. Code, 33-11-6, the commissioner of insurance has certain administrative powers to issue cease and desist orders, and to impose monetary penalties and to revoke the license of the person found violating the Act. It may be argued that this administrative remedy forecloses a private cause of action. However, the administrative remedy provides no direct relief for an injured person, but only provides sanctions against the company or fines in favor of the State.[9] Furthermore, subsection (c) of this statute contains this language indicating that the administrative provisions will not "absolve any person affected by such order or hearing from any other liability, penalty or forfeiture under law."

We have mentioned earlier that W. Va. Code, 55-7-9, expressly provides that even though a statute contains a provision for imposition of a penalty, the penalty does not preclude the right of a person to seek damages for the violation of the statute. Under W. Va. Code, 33-11-6(c), there

---

[9] The material portion of W. Va. Code, 33-11-6, states:

"[T]he commissioner shall issue an order directing such person to cease and desist from engaging in such method of competition, act or practice, and in addition thereto, the commissioner may at his discretion order any one or more of the following:

"(a) Require the payment to the State of West Virginia of a penalty in a sum not exceeding one thousand dollars for each and every act or violation, but not to exceed an aggregate penalty of ten thousand dollars, unless the person knew or reasonably should have known he was in violation of this article, in which case the penalty shall be not more than five thousand dollars for each and every act or violation, but not to exceed an aggregate penalty of fifty thousand dollars in any six-month period.

"(b) Revoke or suspend the license of such person if he knew or reasonably should have known that he was in violation of this article."

is a further recognition of the language in W. Va. Code, 55-7-9, pointing to the conclusion that the commissioner's administrative powers were not intended to be the exclusive remedy for violations of the statute.

In those situations where a statute has granted a class of persons certain rights and there is no statutory language indicating that the administrative remedies provided in the statute are to be considered exclusive, the United States Supreme Court has found an implied private cause of action. In Note 41 of *Cannon v. University of Chicago*, 441 U.S. 677, 707, 60 L.Ed.2d 560, 581, 99 S.Ct. 1946, 1962-63 (1979), the Court stated:

> "True, this Court has sometimes refused to imply private rights of action where administrative or like remedies are expressly available. [Citations omitted]. But it has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute. See *Rosado v. Wyman*, 397 U.S., 406 n. 8, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442; cf. *Cort v. Ash, supra*, 422 U.S., at 74-75, [45 L.Ed.2d 26] 95 S.Ct. at 2086 [2080]; *Calhoon v. Harvey*, supra [379 U.S. 134, 13 L.Ed.2d 190, 85 S.Ct. 292] . . . ."

Here, the Legislature's provisions in W. Va. Code, 33-11-6(c), that the commissioner's administrative orders "shall [not] in any manner relieve or absolve any person affected by such order .. . from any other liability," points to the conclusion that the administrative remedies are not exclusive.

A further factor contained in *Hurley* is to determine whether the private cause of action is consistent with the underlying purpose of the legislative act. Certainly, in the area of unfair settlement practices, the right to a private cause of action is consistent with the underlying legislative purpose, which is to prevent improper settlement practices. The right of a person injured as a result of an unfair settlement practice to recover damages acts as a deterrent against violations of the act. We conclude that a private

cause of action is consistent with the underlying purpose of the act.

Moreover, the legislative policy encouraging prompt settlement of meritorious claims parallels our longstanding judicial policy that encourages compromise and settlement of disputed claims, which Judge Haymond referred to in *Wright v. Davis*, 132 W. Va. 722, 727, 53 S.E.2d 335, 337 (1949):

> "The law favors compromise and reconciliation of differences between persons whose disagreements give rise to litigation. See State ex rel. Showen v. O'Brien, 89 W. Va. 634, 109 S.E. 830; Davis v. Lilly, 96 W. Va. 144, 122 S.E. 444; Caperton's Adm'r v. Caperton's Heirs, 36 W. Va. 635, 15 S.E. 149; ..." [Other citations omitted].

The final factor mentioned in *Hurley* is that a private cause of action from a state statute cannot intrude into an area exclusively delegated to the federal government. This presents no problem in the present case since, as we have previously stated, the regulation of insurance has been left to the several states, 15 U.S.C.A. §1011, *et seq.*, and, consequently, this is not a delegated federal concern.

Our conclusion that an implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code, 33-11-4(9), rests not only upon an analysis of our law which we believe requires a more rigorous examination of the legislative policies but also upon the decisions of other jurisdictions that have implied private causes of action under standards much less exacting than ours. *E.g.*, *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974) (violation of Consumer Fraud Act); *Wetherton v. Growers Farm Labor Ass'n*, 275 Cal. App.2d 168, 79 Cal. Rptr. 543 (1969) (labor law violation); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353 (1978) (violation of workmen's compensation statute); *Sherman v. Field Clinic*, 74 Ill. App.3d 21, 392 N.E.2d 154 (1979) (violation of Collection Agency Act); *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971) (violation of Fair Employment Practices Act); *Cooper v. Nutley Sun Printing*

*Co.*, 36 N.J. 189, 175 A.2d 639 (1961) (labor law violation); *Johnson v. Clay Partition Co.*, 93 Misc.2d 414, 402 N.Y.S.2d 912 (1977), *aff'd*, 65 A.D.2d 737, 411 N.Y.S.2d 189 (1978) (labor law violation); *Browning v. Slenderella Systems of Seattle*, 54 Wash.2d 440, 341 P.2d 859 (1959) (violation of public accommodation act).

## II.

Having found that a private cause of action does exist for violations of W. Va. Code, 33-11-4(9), we next consider whether a direct action can be maintained before the underlying claim is settled. In the present case, the claim is made under W. Va. Code, 33-11-4(9)(f),[10] which involves not attempting in good faith to make a prompt, fair settlement of a claim in which liability has become reasonably clear. It can hardly be doubted that in a given factual situation there may be some bona fide dispute over what is a fair settlement offer or whether liability is reasonably clear. Given the adversarial nature of the settlement of tort claims, it can be expected that the parties will often disagree as to whether there has been a reasonable attempt made to promptly and fairly settle a claim where the liability is reasonably clear.

To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim.[11] Once

---

[10] It would seem apparent that some of the provisions of W. Va. Code, 33-11-4(9), would be unlikely predicates on which to base a cause of action, since their violation would not be the proximate cause of any damages.

[11] Even though it would be procedurally possible to combine the statutory cause of action with the underlying tort claim, we decline to permit this procedure in light of our traditional rule that forecloses reference to liability insurance in personal injury and related actions because of its possible prejudicial impact on the jury. *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 244 S.E.2d 338, 343 (1978), *Leftwich v. Wesco Corporation*, 146 W. Va. 196, 216, 119 S.E.2d 401, 412-13 (1961), *overruled on other grounds*, *Bradley v. Appalachian Power Co.*, 163 W. Va. 332, 256

the underlying claim has been resolved, the issues of liability and damages have become settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim. Moreover, it is not until the underlying suit is concluded that the extent of reasonable damages in the statutory action will be known.[12] The California court for reasons less explicit than these has reached the same conclusion. *Royal Globe Insurance Co. v. Superior Court, supra.* We, therefore, conclude that a private cause of action cannot be maintained for a violation of W. Va. Code, 33-11-4(9), until the underlying suit is resolved.

## III.

We agree with the point raised by the insurance company that there appears to be a qualification to the right to recover in a statutory suit, found in the beginning sentence of W. Va. Code, 33-11-4(9):

"No person shall commit or perform with such *frequency* as to indicate a general business practice any of the following: . . ." [Emphasis added]

The California Court in *Royal Globe Insurance Co., supra,* had great difficulty with similar statutory language and concluded that "a single violation knowingly committed is a sufficient basis for such an action."[13] 23 Cal.3d at 891, 592

---

S.E.2d 879 (1979). *Accord, Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 592 P.2d 329, 153 Cal. Rptr. 842 (1979).

[12] We do not attempt to delineate the entire damage issue on a statutory claim but it obviously does not serve to replicate the damages obtained in the underlying claim. Certainly, increased costs and expenses including the increase in attorney's fees resulting from the failure to offer a prompt fair settlement could be recovered. In an appropriate case, punitive damages may be recovered.

[13] California's statutory language in §790.03(h) of its Insurance Code is:

"Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . ."

P.2d at 336, 153 Cal. Rptr. at 849.

While our statutory language does not contain the word "knowingly" and, therefore, this is not an element of our statutory violation, it does seem clear that more than a single isolated violation of W. Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of "a general business practice," which requirement must be shown in order to maintain the statutory implied cause of action.

We conceive that proof of several breaches by an insurance company of W. Va. Code, 33-11-4(9), would be sufficient to establish the indication of a general business practice. It is possible that multiple violations of W. Va. Code, 33-11-4(9), occurring in the same claim would be sufficient, since the term "frequency" in the statute must relate not only to repetition of the same violation but to the occurrence of different violations. Proof of other violations by the same insurance company to establish the frequency issue can be obtained from other claimants and attorneys who have dealt with such company and its claims agents, or from any person who is familiar with the company's general business practice in regard to claim settlement. Such information is, of course, subject to discovery, and it appears that the Legislature intended under W. Va. Code, 33-11-4(10), to require insurance companies to maintain records on complaints filed against it.[14]

---

The *Royal Globe* decision has been criticized on its statutory construction in Comment, 31 Hastings L. J. 1161 (1980).

[14] W. Va. Code, 33-11-4(10), provides:

*"Failure to maintain complaint handling procedures.* —No insurer shall fail to maintain a complete record of all the complaints which it has received since the date of its last examination under section nine [§ 33-2-9], article two of this chapter. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints and the time it took to process each complaint. For purposes of this subsection, 'complaint' shall mean any written communication primarily expressing a grievance."

For the foregoing reasons, we affirm the judgment of the Circuit Court of Cabell County.

*Affirmed.*

The reference to W. Va. Code, 33-2-9, suggests that relevant grievance information filed with the insurance commissioner can also be obtained.