Betty J. MUTAFIS, Appellee,

v.

ERIE INSURANCE EXCHANGE, a
Pennsylvania Corporation,
Appellant,

and

Erie Insurance Company, a Pennsylvania
Corporation, Defendant.

No. 83-1421.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1984.
Decided March 5, 1984.

Before WINTER, Chief Judge, and MUR-
NAGHAN and SPROUSE, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Erie Insurance Exchange (Erie) appeals
from a judgment entered against it in an
action under West Virginia's Unfair Trade
Practices Act. The judgment was entered
in favor of Betty J. Mutafis, a former poli-
cyholder of Erie, on the verdict of the jury
awarding Mutafis compensatory damages
of $15,000 and punitive damages of $20,000.
The case arose from an Erie employee's act
of placing a memorandum in Erie's claim
file stating that Mutafis was "associated
with mafia very heavily." The district

court denied Erie's post-trial motions to
grant a new trial, to grant judgment n.o.v.,
and to grant a remittitur. *Mutafis v. Erie
Insurance Exchange,* 561 F.Supp. 192 (N.D.
W.Va.1983).

In this appeal Erie advances contentions
that the statute does not apply to the facts
established by the proof, that the statute
does not permit a private cause of action,
that, even if the statute does apply, the
common law defense of qualified privilege
may be invoked despite the apparently con-
trary ruling of the district court, that the
statute as applied in this case violates Erie's
first amendment rights, and that the stat-
ute if it permits recovery of punitive dam-
ages is unconstitutional as a violation of
Erie's first amendment rights.[1] Erie's con-
tentions about the meaning and effect of
the statute, whether it may serve as the
basis for a private cause of action and what
defenses, if any, may be successfully plead-
ed to such a cause of action have not been
the subject of adjudication by West Virgin-
ia's highest court. With regard to Erie's
constitutionally-based contentions, we note
that we should not decide constitutional
issues unless they inescapably require deci-
sion. Erie's contentions based upon the
federal constitution, however, depend in
large part on the resolution of those issues
of the meaning and application of the West
Virginia statute that have not yet been the
subject of definitive adjudication. Accord-
ingly, we certify to the West Virginia Su-
preme Court of Appeals, pursuant to W.Va.
Code Ann. §§ 51-1A-1 *et seq.* (1981 Re-
placement Vol.), the facts and questions
which follow.

1. An aspect of Erie's contentions is that, be-
cause the West Virginia Supreme Court of Ap-
peals had not acted to create a private cause of
action in an even vaguely analogous situation
prior to the conduct which is the basis of this

suit, if an implied statutory cause of action
were to be permitted in the present case, the
effect would be to give the cause of action
retroactive application. We disagree. The
statute in which the district court found a pri-

## I.

Plaintiff was a former policyholder of Erie. Her automobile was stolen in 1979, and three weeks later, the automobile of her cousin, Vincent J. Oliverio was also stolen. Plaintiff's loss was investigated by Erie's adjuster, Richard Kimble. After a relatively brief period of time, plaintiff's automobile was found stripped and burned, and shortly thereafter her loss was paid.

The loss of Oliverio's automobile was also investigated and adjusted by Kimble. Kimble received information from a third party as to the likely whereabouts of the Oliverio vehicle, and as a result payment to Oliverio was delayed. When Oliverio inquired about the delay, Kimble told him that a cousin of Oliverio insured by Erie also had had a car stolen and that Erie was now investigating "your involvement" in the thefts. It is not disputed that the cousin to whom reference was made in the conversation was the plaintiff. Subsequently, Oliverio's vehicle was found stripped and burned, and when no evidence could be developed involving Oliverio in the theft, his claim was paid.

Despite payment of his claim, Oliverio sued Erie for defamation and under West Virginia's "insulting words" statute, W.Va. Code Ann. § 55–7–2 (1981 Replacement Vol.). In the course of discovery in that lawsuit, Oliverio obtained access to a confidential memorandum prepared by Kimble's supervisor, Glenn W. Laque, which became the principal basis of plaintiff's claim. The memorandum, addressed to Leonard Chaffee of Erie's Home Office Audit Department, was a report of an aspect of Kimble's investigation of the Oliverio loss, and it contained this postscript:

Please reference for *your* information to file # W017415, this is a relative and associated with mafia very heavily, although may have NO connection whatever.

The file that was referred to in the postscript was the file on plaintiff's loss.

It is established for purposes of decision that any suggestion that plaintiff had any association with the Mafia is untrue.

After Laque prepared the memorandum, he placed it in a sealed, red, confidential envelope, enclosed the confidential envelope in another envelope, and mailed it from his office in Parkersburg, West Virginia to the head of Erie's audit department in Erie, Pennsylvania. Erie's audit department has responsibility for monitoring suspicious or fraudulent property losses. After receiving and reviewing the memorandum, the head of the audit department placed a copy in plaintiff's file.

As before stated, the existence of the memorandum was disclosed as a result of court-ordered discovery in Oliverio's suit against Erie. After plaintiff was advised of the existence of the memorandum, she sought, through counsel, an apology from Erie and a purging of any untrue statements from her file. Erie denied possession of any unfavorable statements about plaintiff. At some time after the Oliverio trial, Erie clipped and destroyed the postscript in the copy of the memorandum in plaintiff's file.

Plaintiff's suit against Erie alleged causes of action for slander, libel and insulting

vate cause of action implied was enacted in 1974 and thus was effective prior to Erie's acts. *See* 1974 W.Va. Acts, c. 51. Erie thus had notice of the conduct prohibited by the statute well before its acts that are the basis of the present action.

words, but the district court granted directed verdicts on these counts, apparently on the basis that there had been no publication of the memorandum or at least no over-publication. In any event, plaintiff has not appealed from these rulings and their correctness is not before us.

Plaintiff alleged a fourth cause of action—whether Erie's conduct constituted outrageous conduct involving an intentional infliction of severe emotional distress. The district court submitted this claim to the jury, which found for Erie. Plaintiff has not appealed from the judgment entered on this aspect of the jury's verdict so that once again, this issue is not part of this appeal.

Plaintiff's remaining causes of action were based upon two subsections of West Virginia's Unfair Trade Practices Act, W.Va.Code Ann. §§ 33–11–4(3) and (5) (1982 Replacement Vol.). Those subsections are:

§ 33–11–4. **Unfair methods of competition and unfair or deceptive acts or practices defined.**

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

.    .    .    .    .

(3) *Defamation.*—No person shall make, publish, disseminate, or circulate, directly or indirectly, or aid, abet or encourage the making, publishing, disseminating or circulating of any oral or written statement or any pamphlet, circular, article or literature which is false, or maliciously critical of or derogatory to the financial condition of any person and which is calculated to injure such person.

(5) *False statements and entries.*—(a) No person shall knowingly file with any supervisory or other public official, or knowingly make, publish, disseminate,

.    .    .    .    .

circulate or deliver to any person, or place before the public, or knowingly cause directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public, any false material statement of fact as to the financial condition of a person.

(b) No person shall knowingly make any false entry of a material fact in any book, report or statement of any person or knowingly omit to make a true entry of any material fact pertaining to the business of such person in any book, report or statement of such person.

The district court submitted these alleged causes of action to the jury on the evidence that the parties adduced. The jury returned a verdict for plaintiff for both compensatory and punitive damages. Post-trial motions were denied with the discussion and for the reasons set forth in *Mutafis v. Erie Insurance Exchange, supra.*

II.

On these facts, we perceive these undecided questions of West Virginia law which we certify to the West Virginia Supreme Court of Appeals:

1. If the facts stated in part I of this opinion are true, were the actions of Erie, its agents, servants and employees in violation of § 33–11–4(3) and (5), or either of them?

2. If question 1 is answered in the affirmative, does West Virginia law permit a private cause of action by plaintiff against Erie?[2]

3. If questions 1 and 2 are answered in the affirmative, is the common law defense of qualified privilege an available defense to the action?

To afford counsel the opportunity to comment upon both our statement of the relevant facts and the proposed questions prior

2. We are, of course, aware of *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), which held that a private cause of action will lie for a violation of § 33– 11–4(9). The West Virginia Supreme Court of Appeals has not spoken, however, with respect to § 33–11–4(3) or (5).

to certification and to suggest modifications thereto, the formal certification order will be stayed for fourteen days from the filing of this opinion. Any comments or suggestions filed by counsel within this period will be taken under advisement and the facts and questions will be modified as we deem proper. Our formal order of certification will provide that all fees and costs in the West Virginia Supreme Court of Appeals shall be equally divided among the parties.

AN ORDER WILL ISSUE.