525 S.E.2d 649

STONEWALL JACKSON MEMORIAL HOSPITAL COMPANY, a non-profit West Virginia Corporation, Plaintiff below, Appellant,

v.

AMERICAN UNITED LIFE INSURANCE COMPANY, a qualified foreign corporation; Gardner & White Corporation, a non-qualified foreign corporation; Gardner & White, Inc., a non-qualified foreign corporation; Harry D. Jackson, an individual, Defendants below, Appellees.

No. 25832.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1999.

Decided Dec. 6, 1999

Robert G. Steele, Esq., Daniel C. Cooper, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for Appellant.

David K. Schwirian, Esq., Pauley, Curry, Sturgeon & Vanderford, Charleston, West Virginia, Phillip R. Scaletta, Esq., Ice, Miller, Donadio & Ryan, Indianapolis, Indiana, Counsel for Appellee American United Life Insurance Company.

Stephen R. Brooks, Esq., Furbee, Amos, Webb & Critchfield, Fairmont, West Virginia, Counsel for Appellees Gardner & White Corporation; Gardner & White, Inc.; and Harry D. Jackson.

STARCHER, Chief Justice:

In this appeal from the Circuit Court of Lewis County, we are asked to examine the July 13, 1998 order of the circuit court that granted partial summary judgment against the appellant on the issue of whether the appellee insurance company, as a general business practice, violated the West Virginia Unfair Trade Practices Act ("Act"), *W.Va. Code*, 33–11–1 to –10.

The parties in this appeal dispute whether the Act applies to an insurance policy that provides an insured with life insurance annuities. As set forth below, we conclude that the Act does regulate the actions of an insurance company in the handling of claims against an annuity policy. However, we also conclude that the appellant in this case, when responding to the appellees' motion for summary judgment, failed to provide the circuit court with evidence sufficient to establish a genuine question of material fact regarding whether the appellees violated the Act as a general business practice.

Accordingly, we affirm the circuit court's partial summary judgment order.

## I.

### Facts & Background

Appellee American United Life Insurance Company ("AUL") is a mutual life insurance company. In 1971, AUL entered into a "Master Group Annuity Contract" ("the Contract") with the West Virginia Hospital Association ("WVHA") to provide insurance annuities as an investment medium for the pension plans of hospitals that were members of the WVHA. Member hospitals were not required to participate in the plan, but could elect to become a participant in the Contract if they so chose.

Appellant Stonewall Jackson Memorial Hospital ("Hospital") is a private, non-profit hospital located in Weston, West Virginia. Until January 1997, the Hospital was a member of the WVHA.

Effective October 1, 1975, the Hospital elected to participate in the Contract negotiated between AUL and the WVHA. Under the Contract, the Hospital could buy annuities at a set interest rate as an investment to generate pension benefits for its employees. The Hospital would pay money to AUL to purchase the annuities, and in return AUL would pay money out to Hospital employees upon certain events, such as an employee's termination, retirement or death.

The 1971 Master Group Annuity Contract contained no provision that explicitly prohibited the Hospital from terminating its participation in the Contract and withdrawing the money it had contributed toward the purchase of annuities. It was under the 1971 Contract provisions that the Hospital had elected to participate in 1975. The Hospital therefore argues that it could cease to be a

participant in the Contract and withdraw its contributions at any time.

AUL counters by arguing that the original 1971 Contract contained no provision that explicitly allowed the Hospital to withdraw its pension contributions. Therefore, the only way the Hospital could recover the money it invested under the original Contract was through the occurrence of specific events, such as the termination, retirement or death of an employee.

The 1971 Contract allowed AUL and the WVHA to agree, in writing, to make changes in the Contract. However, the Contract also stated that no change could be made that "adversely affect[ed] the benefits provided ... unless the consent of any Participant affected is obtained."

In 1993, with no notice, no effort to obtain consent, and without the knowledge of the Hospital, the WVHA and AUL changed the Contract by adopting "Amendment No. 3." Amendment No. 3 states that if an employer terminated its participation in the Master Group Annuity Contract, and transferred its annuity contributions to another insurance company, then the employer would have to pay significant monetary penalties including an "investment liquidation charge."

In 1994, the Hospital stopped depositing money in the AUL Contract plan. Then, on January 20, 1995, the Hospital tried to withdraw its contributions from AUL and transfer the money to another insurance company for investment. At that time, the Hospital had invested $5,250,380.27 under the annuity contract with AUL.

Upon receiving the Hospital's request that AUL transfer the entire balance of the Hospital's annuity investments, AUL notified the Hospital that it was going to impose a withdrawal penalty of $242,980.25 pursuant to Amendment No. 3. The Hospital pointed out to AUL that under the terms of the original 1971 Contract, an amendment to the Contract that adversely affected the benefits provided would not apply unless the Hospital gave its consent. Hence, because Amendment No. 3 adversely affected the benefits available to the Hospital and its employees, and because the Hospital did not agree to Amendment No. 3, it demanded that AUL relinquish the entire balance of the account without imposing any withdrawal penalties.

AUL refused to transfer any of the Hospital's annuity assets until the Hospital signed a "Notice, Election and Release" form prepared by AUL, including the undisputed amount of $5,007,400.02. The "release" form stated that the Hospital would agree to allow AUL to keep the $242,980.25 withdrawal penalty, and in effect stated that the Hospital was waiving any causes of action that might arise from the withdrawal transaction.[1]

After discussions occurred between the Hospital and AUL, on March 31, 1995 a representative for the Hospital signed the AUL "Notice, Election and Release" form. However, the form was delivered to AUL with a letter stating that the form was signed under protest, and that the Hospital did not agree to the contents of the form.[2] The

---

1. The "Notice, Election, and Release" states, in pertinent part:

In accordance with ... the Contract, the Employer [Stonewall Jackson Memorial Hospital] elects to have AUL make a single lump sum payment....
[T]he amount of such single sum so transferred shall be determined on the date of transfer, and shall be ... reduced by the aggregate amount of any applicable Investment Liquidation Charges....
In consideration of AUL's transfer of funds in accordance with the Employer's instructions ... and in the amount equal to that described ... above, the Employer hereby releases and agrees to hold harmless AUL and its employees, officers and directors from any and all losses, claims, demands or causes of action asserted against them by reason of the Employ-

er's decision to withdraw its participation under the Contract....

2. The letter sent with the "Notice, Election and Release" form states:

[B]e advised that the Hospital does not consent or agree to the Notice, Election, and Release to the extent that it (i) is construed as an accord and satisfaction with respect to the amount received from the contract; (ii) is construed in any manner that would preclude the Hospital from pursuing its legal remedies concerning the amount received from AUL as result of termination of the contract; or (iii) waives or releases any right or remedy arising out of acts or omissions of AUL, its officers, employees, or its agents prior to the transfer of assets.

letter mailed with the form specifically reserves the Hospital's right to pursue legal relief as a result of the actions of AUL.

Several weeks after receiving the signed "Notice, Election and Release," AUL delivered to the Hospital the undisputed $5,007,400.02. However, AUL retained the withdrawal penalty of $242,980.25.

This civil action was filed by the Hospital against AUL and against the insurance agents who managed the annuity Contract, appellee Gardner & White, Inc. and Gardner & White Corporation ("Gardner & White"), and appellee Harry D. Jackson, an insurance agent. The Hospital's complaint generally alleged two causes of action. First, the complaint alleged that AUL and its agents had breached the annuity contract with the Hospital by refusing to transfer the $242,980.25. Second, the complaint alleged that the actions of AUL and its agents amounted to unfair and deceptive insurance trade practices in violation of the West Virginia Unfair Trade Practices Act, *W.Va.Code*, 33-11-4 [1985].

After substantial discovery, on June 9, 1998 appellee AUL filed a motion for summary judgment with the circuit court. Appellees Gardner & White and Mr. Jackson subsequently joined in the motion. Together, the appellees argued that the Hospital had not shown any evidence of duress in the signing of the "Notice, Election, and Release" form, nor any other evidence to show that the form was invalid. The appellees also argued that the Hospital had signed the "Notice, Election, and Release" in consultation with its attorneys. Therefore, the appellees argued that the release form should be construed as a bar to both the Hospital's breach of contract action and unfair trade practices action. Additionally, the appellees contended that the evidence was insufficient to show a breach of contract, or to show that the appellees had engaged in unfair trade practices as a general business practice.

In an order dated July 13, 1998, the circuit court denied the appellees' motion for summary judgment on the breach of contract issue, but granted the appellees' motion on the unfair trade practices action.

As to the breach of contract action, the circuit court ruled that the 1971 Master Group Annuity Contract contained no language whatsoever regarding the Hospital's right to withdraw its money from AUL. The circuit court therefore concluded that "it is implicit in this contract that the [Hospital] could withdraw or transfer the funds held by AUL, even before Amendment No. 3[.]" Furthermore, the circuit court held that the "Notice, Election and Release" form "is not determinative in the resolution of this case and it is clear that [the Hospital] executed this document but without waiving any rights it had to pursue legal remedies." The circuit court therefore denied summary judgment as to the Hospital's breach of contract action.

However, the circuit court granted summary judgment as to the Hospital's claim for violations of the Unfair Trade Practices Act. The court concluded that, "[g]iven the circumstances of this convoluted transaction, I find no fraud, duress, or violation of the Unfair Trade Practices Act."

The case proceeded to a jury trial on the breach of contract issue. After the presentation of evidence by the parties, the circuit court directed a verdict in favor of the Hospital. A judgment order was entered on July 27, 1998 awarding the Hospital $242,980.25 plus 10% prejudgment interest beginning on April 18, 1995; $10,000.00 in future economic losses; and attorneys fees and litigation expenses.

The Hospital then filed this appeal seeking a review of the portion of the circuit court's July 13, 1998 partial summary judgment order that dismissed the Hospital's cause of action alleging that AUL and its agents violated the Unfair Trade Practices Act. Pursuant to Rule .10(f) of the *West Virginia Rules of Appellate Procedure* [1995], AUL cross-appealed various issues raised by the circuit court's July 27, 1998 judgment order.[3]

---

**3.** Appellee AUL's cross-assignments of error allege that the circuit court erred (1) in finding that the "Notice, Election and Release" did not bar the Hospital's breach of contract action; (2) in finding that the Hospital had a right under the Contract to withdraw its annuity investment; (3) in finding that Amendment No. 3 was not binding on the Hospital; (4) in not allowing AUL to

As set forth below, we address those issues raised by the Hospital's appeal. We find no merit to the issues raised by AUL, and decline to address them.

## II.

### Discussion

■ In this case, the appellant Hospital asks that we examine the circuit court's order granting partial summary judgment to the appellees on the issue of whether the appellees violated the Unfair Trade Practices Act. We review a circuit court's entry of summary judgment de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

The parties' dispute over the circuit court's summary judgment order can be broken into two issues: whether, as a matter of law, an insurance company can violate the Unfair Trade Practices Act, when the insurance contract in dispute concerns annuities; and whether, as a question of fact, the appellant in this case introduced sufficient evidence to create a question of material fact regarding whether the insurance company violated the Unfair Trade Practices Act as a general business practice.

We examine these two issues separately.

### A.

### An Annuity Contract as the Basis for a Violation of the Unfair Trade Practices Act

■ The West Virginia Unfair Trade Practices Act was enacted to define and prohibit certain "unfair or deceptive acts or practices" by insurance companies. *W.Va. Code*, 33–11–1 [1974]. *See also, Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 604, 280 S.E.2d 252, 257 (1981), *overruled on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994). The appellant Hospital alleges that AUL and its agents repeatedly violated the Act by refusing to pay over to the Hospital the full value of the annuities purchased by the Hospital; by making mis-

representations about the terms of the Contract between the parties; by failing to investigate the legitimacy of Amendment No. 3, in light of lawsuits and arguments by other hospitals similarly disputing AUL's imposition of withdrawal penalties; and by insisting that the Hospital sign a release before AUL would turn over the $5,007,400.02 in undisputed proceeds invested by the Hospital under the annuity contract.

The Act defines and prohibits numerous unfair claim settlement practices by insurance companies. *W.Va.Code*, 33–11–4(9) [1985], states, in pertinent part:

(9) *Unfair claim settlement practices.*— No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; . . .

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered; . . .

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]

impose a "fair and reasonable surrender charge" on the money withdrawn by the Hospital; and

(5) in the exclusion of certain evidence from the trial.

The appellees argue that the aforementioned portions of the Act apply only to "loss" claims submitted by an insured against a liability or indemnity-type policy, and are wholly inapplicable to claims made by a policyholder against an annuity insurance contract. The appellees characterize this case as a contract dispute between two business entities, and suggest that the Act was intended to protect individual, non-business entities. Lastly, the appellees take the position that the Act was never intended to apply to good-faith disputes between businesses regarding the proper interpretation of an annuity insurance contract. We disagree.

*W.Va.Code,* 33–11–4(9), cited above, repeatedly uses the terms "insurance policy" and "insurance contract," and refers to "claims" made against such a policy or contract, in defining acts that are prohibited by an insurance company. A separate section of the Act, *W.Va.Code,* 33–11–2(c) [1974], broadly defines an "insurance policy" as "the contract effecting insurance."[4] We therefore must determine whether the term "insurance policy" includes contracts, sold by a life insurance company such as appellee AUL, that provide annuities.

*W.Va.Code,* 33–1–1 [1957] states that insurance "is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." Furthermore, *W.Va.Code,* 33–1–10 [1986] specifically defines the various kinds of "insurance" to include annuities such as those sold by AUL to the Hospital. Specifically, *W.Va.Code,* 33–1–10(a) states, with emphasis added:

> The following definitions of kinds of insurance are not mutually exclusive and, if reasonably adaptable thereto, a particular coverage may be included under one or more of such definitions:
>
> (a) Life insurance—Life insurance is insurance on human lives including endowment benefits, additional benefits in the event of death or dismemberment by accident or accidental means, additional benefits for disability and *annuities*[.]

Reading these statutes *in pari materia,* we conclude that a contract under which an insurance company agrees to provide an annuity, such that the insurance company will pay a specified amount upon determinable contingencies, is an "insurance policy" or "insurance contract" subject to regulation under the West Virginia Unfair Trade Practices Act, *W.Va.Code,* 33–11–4(9). *In accord, Morton v. Amos–Lee Securities, Inc.,* 195 W.Va. 691, 696 n. 13, 466 S.E.2d 542, 547 n. 13 (1995) ("The question may be asked as to whether an annuity is an insurance policy under WVUTPA. That question is quickly answered in W.Va.Code 33–1–10 (1986), wherein the definition of life insurance includes annuities.")

We can also infer that the Legislature intended for annuity contracts to be regulated by the unfair claims practice provisions of the Act by examining one narrow statute contained in the Act which specifically excludes life insurance annuities from certain regulations. *W.Va.Code,* 33–11–5a [1996] proscribes certain requirements that an insurance company must follow when canceling an existing life insurance policy and issuing a new policy; *W.Va.Code,* 33–11–5a(c)(1) states, however, that these requirements "shall not apply to ... [a]nnuities." We have often stated that "[i]n the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies." Syllabus Point 3, *Manchin v. Dunfee,* 174 W.Va. 532, 327 S.E.2d 710 (1984). By expressly excluding annuities from regulation in one part of the Act, the Legislature obviously intended that insurance policies providing annuities are to be regulated by the other portions of the Act in a manner similar to any other type of insurance contract.

In this case, the Master Group Annuity Contract provided that AUL would sell annuities to the appellee Hospital. In the Contract, AUL undertook to pay the Hospital and its employees certain benefits on the

---

**4.** *W.Va.Code,* 33–11–2(c) [1974] states:
"Insurance policy" or "insurance contract" means the contract effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof.

occurrence of specified contingencies, such as the retirement or death of an employee. Accordingly, we believe that the AUL Master Group Annuity Contract is an "insurance policy" or "insurance contract" subject to the terms of the Act. Any dispute that the Hospital had with AUL regarding claims against the Contract would be governed by the unfair claims practice provisions of the Act.

The question remains, however, whether the Hospital proffered evidence sufficient to indicate to the circuit court that a genuine issue of material fact existed regarding whether AUL engaged, as a general business practice, in unfair claims practices in its dispute with the Hospital.

### B.

#### Question of Material Fact

The standard of review that guides both this Court and a circuit court in the examination of the evidence underlying a motion for summary judgment was discussed in *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). We stated the basic rule that:

> Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper only where the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

192 W.Va. at 192, 451 S.E.2d at 758. "The circuit court's function at the summary judgment stage is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id., citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). "Summary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995), *quoting Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

■ Under *W.Va.Code,* 33–11–4(9), the appellant in this case was authorized to bring a cause of action for a violation by the appellee insurance company of the unfair settlement practice provisions the Act. However, the statute requires the appellant to prove that the insurance company's misconduct was a "general business practice," so to succeed in such a claim the appellant must prove the insurance company engaged in more than a single, isolated violation of *W.Va.Code,* 33–11–4(9). As we stated in Syllabus Points 2 and 3 of *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981):

> 2. An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33–11–4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved.

> 3. More than a single isolated violation of W.Va.Code, 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of "a general business practice," which requirement must be shown in order to maintain the statutory implied cause of action.

■ In *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996) we clarified that the appellant could prove that a "general business practice" of unfair claims practices existed by showing that multiple, discrete violations of the Act occurred in the processing of a single claim. We stated in Syllabus Point 4 of *Dodrill:*

> To maintain a private action based upon alleged violations of W.Va.Code § 33–11–4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W.Va.Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

■ We now turn to the record to determine whether the appellant proffered sufficient evidence to show that the appellees engaged in multiple actions that violated the Unfair Trade Practices Act, and sufficient evidence to show that those actions were sufficiently pervasive so as to raise a question of fact regarding whether the conduct could be considered a "general business practice."

In its appellate brief, the appellant cites to testimony contained in deposition transcripts which suggests that AUL and its agents, Gardner & White and Mr. Jackson, made numerous statements to the appellant and the WVHA which tended to mislead the appellant as to the terms of the Master Group Annuity Contract and Amendment No. 3.

The appellant also cites to cases where courts in other states have addressed similar disputes concerning AUL's imposition of a "withdrawal penalty" against an employer hospital pursuant to an un-agreed-to amendment to an annuity contract.[5] Furthermore, in its appellate brief, the Hospital states that its witness list contains the names of individuals from two other hospitals in West Virginia, and now states that these individuals were going to testify to identical breaches of annuity contracts by AUL. If presented to a jury, the appellant suggests that this evidence would establish that the appellees were engaging in a "general business practice" that violated the Act.

■ Unfortunately, the evidence referred to by the appellant Hospital was never proffered to the circuit court. We made clear in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995) that when a party files a properly supported motion for summary judgment, the burden shifts to the nonmoving party to supply the circuit court with evidence sufficient to establish that a question of material fact remains for adjudication. We stated, in Syllabus Point 3:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

■ In this case, the appellees sufficiently alleged that there was no genuine issue of material fact concerning whether AUL and its agents, as a general business practice, violated the Act. The burden then shifted to the appellant Hospital to produce additional evidence showing the existence of a genuine issue for trial. The Hospital never met this burden.

The appellant contends that the circuit court erred because it granted summary judgment without reviewing the volumes of information collected by the appellant during discovery that would show the appellees violated the Unfair Trade Practices Act as a general business practice. However, we find nothing in the record to indicate that the appellant ever directed the circuit court's attention to this information. No affidavits,

---

**5.** The first case cited by the appellant is *The Carle Foundation Hospital, etc. v. American United Life Insurance Co.,* Case No. 93–2177 (C.D.Ill.). The appellant states that in 1991, Carle Foundation Hospital filed suit against AUL after it attempted to transfer its fund balance of $11,634,818.97 to another investment, and AUL imposed a withdrawal penalty of $694,432.73 pursuant to an amendment to the initial agreement. The case was ultimately settled for an undisclosed amount.

Another case is *Rapides Regional Medical Center, et al. v. American United Life Insurance Co.,* 938 F.Supp. 380 (W.D.La.1996). In that case, in 1971 the Louisiana Hospital Association entered into an annuity contract with AUL. (The contract number in *Rapides* was G45,188; the Con-

tract disputed in this case is number G45,190). Rapides Regional Medical Center later elected to participate in the contract, and later brought suit after AUL attempted to impose "back-end load commissions" on the annuities purchased by Rapides.

Deposition testimony indicated that AUL was aware of the existence of yet another case that was filed by Deaconess Hospital of Cincinnati, Ohio against appellees American United and Gardner & White. It appears that this action also concerned the methods used by the appellees in administering an annuity plan for a hospital. The Deaconess Hospital case apparently settled for approximately $800,000.00.

deposition transcripts, documents or other evidence firmly substantiating a general business practice of violating the Unfair Trade Practices Act was delivered to the trial judge for review.[6] Furthermore, the appellant's response to the appellees' motion for summary judgment makes no mention of this other evidence.

 We stated in Syllabus Point 2 of *Williams v. Precision Coil, Inc.*, that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

In this case the appellant failed to make any showing to the circuit court that the appellees, as a general business practice, violated the Unfair Trade Practices Act. Accordingly, it was within the circuit court's discretion to grant summary judgment to the appellees.

### III.

### *Conclusion*

For the reasons set forth above, we affirm the circuit court's July 13, 1998 order granting partial summary judgment to the appellees.

Affirmed.

Judge FRED RISOVICH, II, sitting by special assignment.

Justice SCOTT did not participate in the decision of the Court.

---

6. The Hospital's memorandum in opposition to the appellees' motion for summary judgment contains references to the deposition testimony from two witnesses.

The first witness, Dr. Peter Kensicki, was an expert witness on insurance who apparently gave an opinion that AUL's actions violated the Act. However, that opinion was not presented to the circuit court for review. The one page of testimony attached to the appellant's memorandum merely contains Dr. Kensicki's recitation of the facts surrounding the signing of the "Notice, Election and Release," and his opinion that it was "absurd" for AUL to require the Hospital to sign the release before it would release the Hospital's annuity contributions. While Dr. Kensicki's opinion could be read to establish a single violation of the Act, it fails to establish a "general business practice" of violations.

The second witness cited by the appellant was appellee Harry D. Jackson, the insurance agent who communicated between the appellant and AUL. The deposition transcript attached to the appellant's memorandum contains Mr. Jackson's statement that, if the Master Group Annuity Contract was ready to deny the Hospital the right to withdraw its money, then it would not be a very good investment. We do not understand how Mr. Jackson's statement establishes a violation of the Unfair Trade Practices Act.

We understand that these witnesses may have made numerous statements in their depositions that could have established the existence of an issue of material fact as to whether AUL, as a general business practice, violated the Unfair Trade Practices Act. Unfortunately, only these small segments of their testimony were presented to the circuit court. Standing alone, we do not believe that these two snippets of testimony are sufficient to avoid summary judgment.